UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| PROPERTY OF THE PEOPLE, INC., *et al.*, | ) | |
| | ) | |
| PLAINTIFFS | ) | Civil Action No. 1:17-cv-1193 (JEB) |
| | ) | |
| vs. | ) | |
| | ) | |
| DEPARTMENT OF JUSTICE, | ) | |
| | ) | |
| DEFENDANT | ) | |
| | ) | |

# EXHIBIT 1



# DEPARTMENT OF THE TREASURY
## U.S. CUSTOMS SERVICE
### LOS ANGELES, CALIFORNIA

### JUN 25 1998

b7E Per CBP

b6 Per CBP
b7C Per CBP

Subject:     Freedom of Information Act #BAG-FA-98-2720-048
             Hotel Ramada of Nevada

Dea

    This is in reference to your Freedom of Information Act (FOIA) request dated June 18, 1998, in which you ask for copies of the completed Customs Form 6059B on behalf of your client, Hotel Ramada of Nevada's employee,_____ pertaining to an April 13, 1997 and June 23, 1997 clearance into the United States.

b6 Per CBP
b7C Per CBP

    We have located the records pertaining to_____ Customs clearances. Enclosed are copies of Customs Form 6059B for the requested dates. We are authorizing the release of these forms under the terms of the Freedom of Information Act (FOIA), 5 U.S.C. § 552.

    Under regulations adopted pursuant to the Freedom of Information Act, there is a charge for record search time, review time, and duplication. In this case, however, because search and review time were negligible and only 4 pages are provided, there will be no charge.

    Should you have any additional questions, please contact_____ Director, Passenger Division, at_____

b6 Per CBP
b7C Per CBP

Port Director
Los Angeles International Airport

Enclosure

REPLY TO   PORT DIRECTOR, 11099 SOUTH LA CIENEGA BLVD.,  LOS ANGELES, CA  90045

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PROPERTY OF THE PEOPLE, INC., *et al.*,    )
                                           )
                    PLAINTIFFS             )    Civil Action No. 1:17-cv-1193 (JEB)
          vs.                              )
                                           )
DEPARTMENT OF JUSTICE,                     )
                                           )
                    DEFENDANT              )
                                           )

# EXHIBIT 2

 

**U.S. Department of Justice**

**Federal Bureau of Investigation**



In Reply, Please Refer to
File No. 166B-LV-29911

John Lawrence Bailey FBI Building
700 East Charleston Boulevard
Las Vegas, Nevada 89104
December 15, 1998

Nevada State Gaming Control Board
555 East Washington Avenue
Las Vegas, Nevada 89101

b3 -1
b6 -2,-5,-6
b7C -2,-5,-6
b7D -1

Dear

        As you may know, the FBI is presently conducting an
investigation relating to the collection of gambling debts in
Korea by the Mirage and other Las Vegas gaming properties.  As
part of that investigation, we will be interviewing                    in
January of 1999.

                            attorney,

                                        I spoke with Deputy Attorney
General                              on the telephone and he advised that I
contact you in order to

            Please let me know if you have any objection to
permitting                    to examine the transcripts of
testimony.  Thank you for your assistance.

b3 -1
b6 -1,-2,-5,-4,-6
b7C -1,-2,-5,-4,-6
b7D -1

                                        Sincerely yours,


                                        Special Agent                            X

cc: AUSA

166B-LV-29911-30

6 2067.98

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PROPERTY OF THE PEOPLE, INC., *et al.*, | ) |
| | ) |
| PLAINTIFFS | ) Civil Action No. 1:17-cv-1193 (JEB) |
| | ) |
| vs. | ) |
| | ) |
| DEPARTMENT OF JUSTICE, | ) |
| | ) |
| DEFENDANT | ) |
| | ) |

# EXHIBIT 3

## HUNTERTON & ASSOCIATES
### ATTORNEYS AT LAW
333 SOUTH SIXTH STREET
LAS VEGAS, NEVADA 89101

C. STANLEY HUNTERTON
SAMUEL B. BENHAM
PAMELA R. LAWSON
TERRY JOHN CARE
KATHERINE M. PECK

TELEPHONE (702) 388-0098
FACSIMILE (702) 388-0361
E-MAIL: <Ha.LasVegas@worldnet.att.net>

May 5, 1999

VIA HAND DELIVERY

Assistant U.S. Attorney
701 E. Bridger Ave., #500
Las Vegas, NV 89101

b6 -4
b7C -4

Re:   <u>MRI v. Trump Hotel & Casino, et al.</u>

Dear

    Enclosed please find a copy of the captioned complaint, which I mentioned in my letter of April 21, 1999. I didn't have the complaint in hand when I wrote you on the day it was filed, but wanted you and your "successor in interest" to have it.

    I hope to see you before you leave for Washington, D.C.

Sincerely,

HUNTERTON & ASSOCIATES

b6 -6
b7C -6

CSH/mg

RECEIVED
MAY 05 1999
LAS VEGAS STRIKE FORCE

(Page 1 of Complaint)

166B-LV-29911-43

b6 -1
b7C -1

People-353

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PROPERTY OF THE PEOPLE, INC., *et al.*,   )
                                          )
                    PLAINTIFFS            )   Civil Action No. 1:17-cv-1193 (JEB)
          vs.                             )
                                          )
DEPARTMENT OF JUSTICE,                    )
                                          )
                    DEFENDANT             )
_____   )

# EXHIBIT 4

FD-350 (Rev. 5-8-81)

(Indicate page, name of
newspaper, city and state.)

(Mount Clipping in Space Below)

Date: 9-21-2008
Edition:
        Phila Inq
Title:
        Pg C 4

Character:
   or
Classification:
Submitting Office:

Indexing:

## Slots Licenses

# Rendell and friends

Donald Trump took some shots at Gov. Rendell last week for the state's sloppy handling of its nascent slots-parlor industry.

Trump said Pennsylvania is "too political," and apparently "you have to be a friend of the governor" to get a gambling license.

Perhaps Trump's comments were sour grapes. His attempt to gain a slots license in Philadelphia was rejected in favor of the Foxwoods and SugarHouse proposals in 2006.

But Trump's comments aren't the first time that it has been alleged that political connections may have influenced who received a lucrative slots license.

And it's not the first time the question of whether pay-to-play played a role in the handing out of slots licenses has come up.

Indeed, how could the question not be asked when some of Rendell's most loyal and biggest campaign contributors are also investors in the two Philadelphia casinos awarded licenses?

Winning bidders in other parts of the state also have political ties to powerful politicians in Harrisburg. Lack of experience in the gaming industry didn't seem to matter. The winners were handed coveted licenses to open casinos expected to pull in $1 million a day in revenue.

The ties between bidders and politicians set the backdrop for a series of events that have further undermined public confidence in the state's ability to oversee the slots industry.

• Poconos slots owner Louis DeNaples was indicted earlier this year for allegedly lying about his alleged ties to mobsters — a charge he denies.

• State Sen. Vincent J. Fumo (D., Phila.), the main au-



**Donald Trump:** "You have to be a friend of the governor" to get a gambling license.

thor of the slots bill, which was passed in the dark of night in 2004, is about to go on trial for corruption charges unrelated to gambling.

• The state gaming board itself has turned into a revolving door of lawyers quitting to go work for slots-parlor owners.

The two Philadelphia slots parlors have run into opposition from residents and the city over their proposed locations, traffic concerns and other issues.

As a result, Foxwoods has offered to move from the waterfront to the Gallery in Center City. If approved, a big beneficiary would be Ron Rubin, whose real estate company owns the Gallery.

Rubin has been a longtime Rendell backer, and through his partnerships has given the governor more than a quarter of a million dollars over the years. Rubin's charitable trust is also an investor in Foxwoods.

Other Foxwoods investors include Comcast Spectacor Chairman Ed Snider, attorney and parking lot owner Lewis Katz, and developer Peter DePaul — all Rendell contributors who have given him tens of thousands of dollars over the years.

Trump referenced those connections in his comments to the Daily News last week: "What the governor did is outrageous," he said. "He let a group of his political friends go to another site."

To be fair, there were Rendell contributors among the investor groups that didn't get a slots license. Even Trump himself gave Rendell $32,000 in political contributions between 2001 and 2003.

Perhaps that shows there is some gambling involved in pay-to-play. Is it also the other way around?

People-1021

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PROPERTY OF THE PEOPLE, INC., *et al.*,    )
                                            )
                        PLAINTIFFS          )    Civil Action No. 1:17-cv-1193 (JEB)
            vs.                             )
                                            )
DEPARTMENT OF JUSTICE,                      )
                                            )
                        DEFENDANT           )
_____    )

# EXHIBIT 5

10/19/00

[                              ] date of birth [            ]          b6 -6
[              ] Social Security Account Number [        ] office        b7C -6
telephone number [                ] was interviewed regarding
promotions at the Attorney General's Office, State of Louisiana.
After being advised of the interviewing agent's identity, [        ]
provided the following information.

After [            ] was hired as [                    ]              b6 -6
[                  ] State of Louisiana, in March, 1997, [      ] began    b7C -6
to reorganize personnel within the office. [          ] advised it was
[            ] intent to take total control over every decision.

[          ] stated prior to [          ] hiring, the Division
Directors reported to the [                    ] but               b6 -6
they also had access to the Attorney General. [        ] implemented    b7C -6
a new management structure creating three (3) or four (4) new
Deputy Director positions.  With the creation of these positions,
the Division Directors now report to the Deputy Directors who in
turn report to [          ]  The Division Directors' access to the
Attorney General has essentially been eliminated.

The individuals selected to become Deputy Directors
were [                        ] (phonetic), [            ] and       b6 -5,-6
[                    ] (phonetic). [        ] advised these          b7C -5,-6
individuals were promoted because of the role they played during
the investigation of [          ] went to [        ] and
attempted to have [          ] prosecuted, [          ] was in charge
of the investigation, and [            ] controlled the legislative
and public issues. [            ] was also promoted to [        ]
[        ] and currently reports to [              ]

---------------------------------------------------------------------
Case ID :                                                        b7A -1
[                                                    ]

---- Working Copy ----                          Page       1

12/6/99

[blank] date of birth [blank]                                    b6 -5,-6
[blank] place of birth Louisiana, was interviewed regarding the   b7C -5,-6
15th riverboat license.  Also present was [blank]
[blank] State of Louisiana Department of Justice, 330
Florida Street, Suite 500, Baton Rouge, Louisiana 70801,
telephone number [blank] was advised of the
identities of the interviewing agents and the purpose of the
interview. [blank] furnished the following information:

[blank] stated she is an attorney at the Louisiana            b6 -6
Attorney General's office and has been employed by the Attorney   b7C -6
General's office since April 1994.  Sometime in 1996, the
Louisiana Gaming Control Board decided to establish applicant
procedures regarding riverboat gaming licenses.  As a result of
the applicant procedures being established [blank] got involved
with the 15th riverboat selection process. [blank] role in the
selection process consisted of following instructions given to
her by [blank] stated initially when the 15th
riverboat selection process started [blank] had a meeting with all
riverboat gaming attorneys at the Attorney General's office.
[blank] appointed [blank] in charge of establishing
procedures regarding the 15th riverboat license. [blank] took
direct instructions from [blank] stated teams were
formed with the Louisiana State Police in order to work on
specific applicants for the 15th riverboat license. [blank] was
assigned the HOLLYWOOD DEBARTOLO application, the HORSESHOE
application and the HARRAH's Red River application.

[blank] stated on her team was [blank] (Last Name Unknown)       b6 -6
LNU from Louisiana Revenue and Taxation, State Trooper [blank]     b7C -6
[blank] and a State Police Auditor the name she could not
remember. [blank] stated HOLLYWOOD DEBARTOLO's application was
filed in August 1996. [blank] her role in the
application process was to serve [blank] to the
Louisiana Gaming Enforcement Division or to Louisiana State
Troopers. [blank] was not to have a direct role in the application
process. [blank] would participate in some of the interviews,
especially if the interviewee wanted an attorney present. [blank]
would not actively investigate the applicant just give legal
advice.  Any correspondence written by [blank] was prepared on
Louisiana Attorney General letterhead. [blank] stated sometimes a
State Trooper would giver her information and she would put that
information on the Attorney General's letterhead.

[blank] remembered one legal issue regarding the                b6 -6
HOLLYWOOD DEBARTOLO project was whether or not certain documents  b7C -6
would remain confidential. [blank] responded to a letter by [blank]
[blank] which provided the Attorney General considered the
documents in question confidential.  At this time [blank] was shown
the [blank] letter and a letter written by [blank]

--------------------------------------------------------------
Case ID :                                                     b7A -1
[blank]

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| PROPERTY OF THE PEOPLE, INC., *et al.*, | ) | |
| | ) | |
| PLAINTIFFS | ) | Civil Action No. 1:17-cv-1193 (JEB) |
| vs. | ) | |
| | ) | |
| DEPARTMENT OF JUSTICE, | ) | |
| | ) | |
| DEFENDANT | ) | |
| | ) | |

# EXHIBIT 6

```
          NK88A-66770 C          3242                          b6 -6
                                                               b7C -6

          NK192B-78307           20
          NK166E-76048 A         1
          NK192B-78307           8
          NK192B-78307           9
          NK192B-78307           10

          NK192B-78307           11

          NK192B-78307           11

          NK166E-75675 E         2

          NK88A-66770 C          906A

                                                               b6 -6
                                                               b7C -6
          NK31C-80549 GUIRE      1

          NK88A-66770 C          2563
          NK88A-66770 C          2564

          NK31C-69030            1B1D
     TRUE LIES                         140*GARSIDE
ST*NEWARK*NJ*-
                                                               b7A -1

                                                               b6 -6
                                                               b7C -6
          NK88A-74000 E          1117A

          NK26A-89893 INTV       94
-*-*MORRISTOWN*NJ*-
          NK88A-74000 E          1422A

TRUMP PLAZA HOTEL
                                                               b7A -1

                                      -*RESIDENCE            b6 -6
                                                               b7C -6
                                 VIOCRIM DATABASE
                                 NAME/IDENT
LISTING

PAGE 197

NAM-IDENT.................. FST-NAM....... MID-NAM...
ADDRESS............................ A/C  PHONE...  MISC..........
     FILE............... SERIAL
          NK31C-80549 GUIRE      1
                                      -*-*-*FN*-          b6 -6
          NK31C-80549 GUIRE      1                          b7C -6
```

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PROPERTY OF THE PEOPLE, INC., *et al.*,    )
                                            )
                        PLAINTIFFS          )    Civil Action No. 1:17-cv-1193 (JEB)
              vs.                           )
                                            )
DEPARTMENT OF JUSTICE,                      )
                                            )
                        DEFENDANT           )
_____)

# EXHIBIT 7

gamingec.wpd

(Rev. 01-31-2003)

# FEDERAL BUREAU OF INVESTIGATION

**Precedence:** ROUTINE                              **Date:** 12/22/2005

**To:** Philadelphia

**From:** Philadelphia
      Harrisburg Resident Agency (HRA)
      Contact:                                                            b6 -1
                                                               b7C -1

**Approved By:**

**Drafted By:**

**Case ID #:** 194A-PH-C9951̶8̶   (Pending)

**Title:** CHANGED
      PENNSYLVANIA GAMING COMMISSION;
      POSSIBLE CORRUPTION OF STATE OFFICIALS

**Synopsis:**  To provide results of searches conducted regarding                       b6 -5,-6
_____ and advise of a title         b7C -5,-6
change.

**Previous Title:**  Title marked "Changed" to Pennsylvania Gaming
Commission; Possible Corruption of State Officials.  Title
previously carried as "Pennsylvania Gambling Commission; Possible
Corruption of State Officials."

**Details:**  Searches in ACS regarding [                    ]         b6 -5,-6
[            ] were met with the following results.  The document      b7C -5,-6
dated 1/10/05, is the interview of [            ] regarding vandalism
of her vehicles and whether the damage was caused randomly or due
[                    ]

      The document dated 11/22/04, is an interview of [        ]      b6 -5,-6
[            ] The interview discusses the Gaming Control Board and her      b7C -5,-6
position there as well as letters concerning Mastervideo Poker
and Nat's Gaming which were written in 1997.  [        ] advised she
was going to look into the letters and re-contact the
interviewing agents.

      The document dated 9/9/04, discusses information
provided by the United States Attorney's Office Eastern District
of Louisiana.  The information was based on questionable business      b6 -5,-6
activities of [                    ] a local businessman.  [        ] was      b7C -5,-6
referenced in this EC regarding her association with [            ]

Title Changed
1-11-06
tov

SEARCHED _____ INDEXED _____
SERIALIZED _____ FILED _____

JAN 1 1 2006

FBI—PHILADELPHIA

192-PH-99239-HRA-13
194A-PH-C99518-4

People-1449

To: Philadelphia  From:  Philadelphia
Re:  194A-PH-C99515, 12/22/2005

The document dated 10/19/00, is regarding promotions at       b6 -5,-6
the Attorney Generals's Office, State of Louisiana. [            ] is    b7C -5,-6
mentioned regarding her promotion to the [            ]

The document dated 12/6/99, is an interview of       b6 -5,-6
[            ] regarding the 15th riverboat license. [      ] is    b7C -5,-6
[            ] at the Louisiana Attorney General's Office.
[      ] was present at the interview.

Searches on the internet were met with the following
results.  An article on the post-gazette.com website dated
Friday, December 2, 2005, advised that [            ] was     b6 -5,-6
                                                                        b7C -5,-6

[            ] An article in the Thoroughbredtimes.com dated
11/30/2005 is regarding this same matter.

The following articles discuss other matters involving
the Pennsylvania Gaming Board to include the hiring of executives
and officials; Centredaily.com dated Saturday, August 20, 2005,
post-gazette.com dated Thursday, August 18, 2005, and philly.com
daily news article dated, Friday, July 8, 2005.

◆◆

2

People-1450

Case 1:17-cv-01193-JEB   Document 56-2   Filed 10/19/20   Page 17 of 48



**Change the view from your desk.**
Click here for post-gazette.com desktop wallpaper photos.

| Home | News | Sports | Lifestyle | A&E | Events | Business | Jobs | Cars | Classifieds | Subscribe | Se |

## post-gazette.com **Local News**

Monda

**Local News**
Latest News
Previous Articles
Neighborhoods
News Obituaries
Education
Weather
Elections
Photo Journal
Transportation
Events Calendar
The Morning File
Night Light
Capitol Notes
Columnists
Consumer
Special Reports
First Amendment



Expanded Commercial
Real Estate Listings



Weather
CLICK HERE

Expanded
Employment
Classifieds

post-gazette.com
Headlines
by E-mail

# Capitol Notes: Some gaming, some BlackBerries and Santa, too

Friday, December 02, 2005

By Tracie Mauriello and Tom Barnes, Post-Gazette Harrisburg Bureau

Welcome to Capitol Notes, a bite-size summary, available only on-line, of news happening under the green dome at your state Capitol.

## GAMING WOES

The Pennsylvania Gaming Control Board is behind schedule for issuing licenses for up to seven racetrack/casinos. The original goal of issuing them by February has slipped to June at the earliest.

Part of the reason is a lawsuit filed against the July 2004 slots law, which wasn't dismissed by the state Supreme Court until late June.

Another holdup has been a dispute over new companies called slots distributors/suppliers, which will be middlemen who buy slot machines from manufacturers and sell them to the casinos. Board members can't agree on procedures to license the suppliers.

While board members had foreseen some of the delays, what they didn't foresee was problems involving their own staff members.

One of the board's lawyers, Michael Schwoyer, was arrested this summer after being accused of scuffling with police outside a bar in downtown Harrisburg. He eventually pleaded no contest to disorderly conduct and public drunkenness and was fined $500. He still works for the board.

Then in October, another lawyer for the gaming board, LaMonte Williams, was cited by Harrisburg police for simple assault and public intoxication after a fight in a Downtown Harrisburg bar. He was accused of biting a bartender on the arm, charges that are still pending.

Then this week, the board's top executive, Anne LaCour Neeb, formerly of New Orleans, was accused by Louisiana officials of falsifying her attendance records and collecting pay for hours she didn't work while she was director of Louisiana's gambling board.

3 M

Click |
ou

post-g

People-1540
12/12/2005

Mrs. Neeb has strongly denied doing anything wrong, saying "there is no truth to these allegations. They are completely false." She claimed the allegations were retribution by Louisiana officials for her telling the FBI about possible gambling corruption in that state.

Except for five days in late August when Hurricane Katrina made it illegal for anyone in New Orleans to go to work, Mrs. Neeb said, "I worked all of the hours I was paid for and accounted for them completely."

Gaming board spokesman Nick Hays has declined to comment about the personnel problems.

The gaming board has hired 90 people so far for its staff and expects to reach as many as 200. Let's hope that no others get their names into newspapers for the wrong reasons.

## BLACKBERRIES

There's one surefire way for newcomers to identify the important people in the Capitol's beehive of politicians, lobbyists, journalists, lawyers, judges and onlookers. Just look for the BlackBerries.

For the technophobes out there -- including a certain co-author of this column -- a BlackBerry is an all-in-one cell phone, organizer, pager, Internet browser, instant messenger and e-mail receiver. No Harrisburg mover-and-shaker wants to be seen without one.

At some legislative hearings, it seems like everybody is checking their messages on their BlackBerries rather than listening to what legislators are saying.

Needless to say, Capitol Notes won't be moving or shaking anytime soon.

## A HOUSE FULL OF DOUBTING THOMASES

Aiming to produce a son who will one day help run Pennsylvania? Here's a tip: Name him Thomas.

Twelve of the 203 state House members share that first name. If you count Rep. Curtis W. Thomas, there are 13 Thomases running your state House.

The Senate doesn't have a single Thomas, but six of its 50 members, including President Pro Tempore Jubelirer, are named Robert.

## REMEMBERING FORMER SECRETARY TUCKER

Former Secretary of State C. DeLores Tucker, who died last month at age 78, will long be remembered for her tenure under the Capitol's dome and for her tireless work on civil rights issues.

Case 1:17-cv-01193-JEB   Document 56-2   Filed 10/19/20   Page 19 of 48

The Senate will honor her memory Monday with a resolution introduced by Sen. LeAnna M. Washington, D-Philadelphia.

"Dr. Tucker was a remarkable woman and a great American," Ms. Washington said.

Dr. Tucker was the first black woman to serve as Pennsylvania's secretary of state. She served from 1971 to 1977.

The Philadelphia native was a civil rights activist who had joined the Rev. Martin Luther King in peaceful demonstrations throughout the country. In later years, she spoke out against violent and sexually explicit rap lyrics.

"Dr. Tucker lead such an exceptional, admirable life," Ms. Washington said.

## SANTA GETS RECOGNITION, TOO

Legislators from both sides of the aisle are getting into the Christmas spirit with a House resolution recognizing Pennsylvania's own jolly old fellow.

It seems that the bearded elf who has been slipping down chimneys for years may have an alter ego in Franklin D. Linn Sr.

Mr. Linn, aka St. Nick, has been donning his red suit and distributing presents and goodwill around Greater Harrisburg since 1955 when he was just 14 and entertained classmates at Swatara Junior High School.

Now, he regularly appears at local malls and occasionally at Capitol holiday events -- unless the legislators have been naughty. No word yet on whether he'll show up this year.

Mr. Linn has served 30 years as a commissioner for Lower Swatara Township and works for House Speaker John Perzel as a specialist in intergovernmental affairs. He saves his vacation days for November and December so he can appear at Colonial Park Mall Wednesdays through Saturdays.

"If you want to be Santa Claus, you've got to put your heart and soul into it," he said.

He and Mrs. Claus (the former Paulette Houser) have three elves and four grand-elves.

---

*(Tracie Mauriello can be reached at **tmauriello@post-gazette.com** or 717-787-2141. Tom Barnes can be reached at **tbarnes@post-gazette.com** or 717-787-4254.)*

Case 1:17-cv-01193-JEB   Document 56-2   Filed 10/19/20   Page 20 of 48

PAID ADVERTISING

**Jennings Slots Wanted**
Top National Buyer Of Slot Machines Get An Immediate Offer Today

Ads by Goooooogle

**30 Free Casino Games**
Online-Casino games for fun Slots, roulette, poker, blackjack

Advertise on this site

**E-mail this story** 🖾 **Print this story** 🖨

Search | Contact Us | Site Map | Terms of Use | Privacy Policy | Advertise | About Us | Help | Correcti

Copyright ©1997-2005 PG Publishing Co., Inc. All Rights Reserved.

People-1543
12/12/2005

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PROPERTY OF THE PEOPLE, INC., *et al.*,   )
                                          )
                    PLAINTIFFS            )   Civil Action No. 1:17-cv-1193 (JEB)
          vs.                             )
                                          )
DEPARTMENT OF JUSTICE,                    )
                                          )
                    DEFENDANT             )
                                          )

# EXHIBIT 8

1A Envelope

Case ID: 194A-NK-88595

| | | |
|---|---|---|
| NK | 28 | PHOTOS OF TORCHIERE TAKEN AT GREAT GATSBY'S 1/29/97 |
| NK | 29 | PAGE FROM GREAT GATSBY'S ADVERTISEMENT INDICATING TORCHIERES |
| NK | 30 | COPIES OF CHECKS DEPOSIT SLIPS AND DEPOSIT ITEMS FOR ACCOUNT FOR THE PERIOD 9/27/95 THROUGH 5/9/96 COPIES OF CHECKS DEPOSIT SLIPS AND DEPOSIT ITEMS FOR ACCOUNT FOR THE PERIOD 12/7/95 THROUGH 11/13/96 |
| NK | 31 | ORIGINAL NOTES RE INTERVIEW OF [ ] |
| NK | 32 | ORIGINAL NOTES RE INTERVIEW OF [ ] |
| NK | 33 | ORIGINAL NOTES RE INTERVIEW OF [ ] |
| NK | 34 | COPIES OF SIGNATURE CARD, CORPORATE BANKING RESOLUTIONS, AND BANK STATEMENTS FOR ACCT #2704856 IN THE NAME OF OCEAN ATLANTIC INC FOR THE PERIOD 1/22/96 THROUGH 3/31/97 |
| NK | 35 | CCTV VIDEO ONLY SURVEILLANCE LOG |
| NK | 36 | COPIES OF DEPOSIT SLIPS, DEPOSIT ITEMS AND CHECKS FROM ACCT [ ] IN THE NAME OF [ ] ATTORNEY BUSINESS ACCOUNT FOR THE PERIOD 2/29/96THRU 11/27/96 |
| NK | 37 | COPIES OF BANK STATEMENTS FOR ACCT #2255074132 IN THE NAME OF OCEAN ATLANTIC INC FOR THE PERIOD 3/9/95 THROUGH 4/30/96 |
| NK | 38 | COPIES OF DEPOSIT ITEMS AND CHECK S FROM ACCOUNT #2704856 IN THE NAME OF OCEAN ATLANTIC INC FOR THE PERIOD 1/22/96 THRU 3/27/97 |
| NK | 39 | ORIGINAL NOTES RE INTERVIEW OF [ ] (PROTECT IDENTITY) |
| NK | 40 | COPY OF COMPLAINT IN US DISTRICT COURT, SOUTHERN DISTRICT OF NY 97CIV6693 IN THE MATTER OF MIRAGE RESORTS INC, PLAINTIFF VS DONALD TRUMP, TRUMP HOTEL & CASINO, RESORTS, & HILTON HOTELS CORPORATION, DEFENDANTS |
| NK | 41 | FORENSIC WORKSHEET FOR SIREX CPU DX9350949 |
| NK | 42 | PHYSICAL SURVEILLANCE LOG DATED [ ] |
| NK | 43 | COPY OF ENVELOPE & 11/3/94 LETTER FROM [ ] TO [ ] RE: RESOLUTION #841 DEALING WITH NEW BASEBALL STATIUM IN ATLANTIC CITY, NJ |
| NK | 44 | NON-PERTINENT INFORMATION FROM CORPORATION CHECK ON OASIS, INC, ATLANTIC CITY, NJ |
| NK | 45 | ORIGINAL NOTED RE INTERVIEW OF [ ] |
| | | |
| | | |

b6 -6
b7C -6

b6 -2
b7C -2

b7D -6

b7E -2

b6 -6
b7C -6

b7D -4

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PROPERTY OF THE PEOPLE, INC., *et al.*,    )
                                           )
                 PLAINTIFFS                )    Civil Action No. 1:17-cv-1193 (JEB)
        vs.                                )
                                           )
DEPARTMENT OF JUSTICE,                     )
                                           )
                 DEFENDANT                 )
_____    )

# EXHIBIT 9

FD-302 (Rev. 10-6-95)

- 1 -

## FEDERAL BUREAU OF INVESTIGATION

Date of transcription    2/1/99

On _____ a physical surveillance was
conducted at _____

       b6 -2
       b7C -2
       b7E -2

Surveillance log as follows:

Investigation on _____ at Atlantic City, NJ     b7E -2

File # 194A-NK-88595- ROSUR-10     Date dictated   2/1/99

by   SA _____ du _____
    SA _____ EC

    b6 -1
    b7C -1

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

People-4018

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| PROPERTY OF THE PEOPLE, INC., *et al.*, | ) | |
| | ) | |
| PLAINTIFFS | ) | Civil Action No. 1:17-cv-1193 (JEB) |
| vs. | ) | |
| | ) | |
| DEPARTMENT OF JUSTICE, | ) | |
| | ) | |
| DEFENDANT | ) | |
| | ) | |

# EXHIBIT 10

FD-302 (Rev. 10-6-95)

- 1 -

# FEDERAL BUREAU OF INVESTIGATION

Date of transcription    1/28/99

On _____ a physical surveillance was    b6 -2
conducted at _____    b7C -2
_____    b7E -2

Surveillance log as follows:

Investigation on _____ at Atlantic City, NJ    b7E -2

File # 194A-NK-88595-FISUR-7     RUC    Date dictated   1/28/99

by SA _____ du SA _____    b6 -1
   b7C -1

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

People-4020

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PROPERTY OF THE PEOPLE, INC., *et al.*,   )
                                          )
                    PLAINTIFFS            )   Civil Action No. 1:17-cv-1193 (JEB)
        vs.                               )
                                          )
DEPARTMENT OF JUSTICE,                    )
                                          )
                    DEFENDANT             )
_____      )

# EXHIBIT 11

DATE MONITORED:

TYPE OF RECORDING:

SUBJECTS OF TAPE:

MONITORING AGENT:

TRANSCRIBED BY:

TYPED BY:

b3 -3
b6 -1,-2,-6
b7C -1,-2,-6
b7D -6

PAGE 1        194B-NK-88595        b7D -6

People-3982

DATE MONITORED:

TIME:

TYPE OF RECORDING:

SUBJECTS:

MONITORING AGENT:

TRANSCRIBED BY:

TYPED BY:

ABBREVIATIONS:

b3 -3
b6 -1,-2,-6
b7C -1,-2,-6
b7D -6

UNINTELLIGIBLE (UI)
INAUDIBLE (IA)
UNIDENTIFIABLE MALE(S) (UM)
UNIDENTIFIABLE FEMALE(S) (UF)
PHONETIC (PH)

TAPE I, SIDE I AND II
TAPE II, SIDE I AND II

PAGE 1

194B-NK-88595

b7D -6

People-3985

DATE MONITORED:

TYPE OF RECORDING:

SUBJECTS:

MONITORING AGENT:

TRANSCRIBED BY:

TYPED BY:

NKCM NUMBER:

ABBREVIATIONS:

b3 -3
b6 -1,-2,-6
b7C -1,-2,-6
b7D -6

UNINTELLIGIBLE (UI)
UNIDENTIFIABLE MALE(S) (UM)
UNIDENTIFIABLE FEMALE(S) (UF)
PHONETIC (PH)

b7D -6

194B-NK-88595

People-3995

DATE MONITORED:

TYPE OF RECORDING:

SUBJECTS OF TAPE:


MONITORING AGENT:

TRANSCRIBED BY:

TYPED BY:

b3 -3
b6 -1,-2,-6
b7C -1,-2,-6
b7D -6

PAGE 1          194B-NK-88595

b7D -6

People-4003

DATE MONITORED:

TYPE OF RECORDING:

SUBJECTS:

b3 -3
b6 -1,-2,-6
b7C -1,-2,-6
b7D -6

MONITORING AGENT:

TRANSCRIBED BY:

TYPED BY:

FILE NUMBER:            194B-NK-88595

NKCM NUMBER:

                        TAPE I SIDE A AND B
                        TAPE II SIDE A

ABBREVIATIONS:          UNINTELLIGIBLE (UI)
                        UNIDENTIFIABLE MALE(S)
                        (UM, UM-1, UM-2)
                        UNIDENTIFIABLE FEMALE(S) (UF)
                        PHONETIC (PH)

PAGE 1                                          194B-NK-88595          b7D -6

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PROPERTY OF THE PEOPLE, INC., *et al.*,  )
                                          )
                    PLAINTIFFS  )   Civil Action No. 1:17-cv-1193 (JEB)
        vs.  )
                                            )
DEPARTMENT OF JUSTICE,  )
                                            )
              DEFENDANT  )
_____  )

# EXHIBIT 12

FD-340 (Rev. 7-29-92)

Universal Case File Number _1668-LV- 29911 - 1A1_

Field Office Acquiring Evidence _Las Vegas_

Serial # of Originating Document _____

Date Received _2/5/98_

From _____
(Name of Contributor)

_____
(Address of Contributor)

b6 -1,-2,-5
b7C -1,-2,-5
b7D -1

By _SA_ _____

To Be Returned   ☐ Yes  ☑ No
Receipt Given   ☐ Yes  ☑ No
Grand Jury Material - Disseminate Only Pursuant to Rule 6 (e)
Federal Rules of Criminal Procedure
            ☐ Yes  ☑ No

Title: _____

_Et Al;_
_ITAR_

Reference: _____
(Communication Enclosing Material)

_____

Description:  ☐ Original notes re interview of _____

_Copy of_ _____

_by_ _____ _date_

_5/12/97._

People-7

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PROPERTY OF THE PEOPLE, INC., *et al.*,   )
                                          )
                    PLAINTIFFS            )   Civil Action No. 1:17-cv-1193 (JEB)
        vs.                               )
                                          )
DEPARTMENT OF JUSTICE,                    )
                                          )
                    DEFENDANT             )
_____   )

# EXHIBIT 13

# Memorandum



To : SAC (137-22152 ) (ADm)          Date : 9/22/81

From : SUPV. DAMON T. TAYLOR

NY 18904-OC — Sullivan

Subject :

     On 5/21/80, writer was introducd to source by
the operating Case Agent. Source provided to writer on the
above date, a general background conerning LCN influence in
the Eastern Conference of Teamsters. On 7/14/80, writer again met
with source in the presence of the Case Agent and discussed the
same topic. Five (5) of the meetings took place thereafter, in-
volving writer, Case Agent and source; during these meetings
source discussed public documents and general historical back-
ground regarding the teamsters union as well as the organized
labor movement in the United States (US) as it relates to Organized
Crime. Much of this information is the subject of many books,
some of which source collaborated on with journalists in preparing
the manuscripts.

     In early April of 1981, writer was contacted by
Case Agent and was subsequently advised that the source had a
business relationship with DONALD and ROBERT TRUMP of the
Trump Organization. The source, in this case, owns a piece of
property (along with other partners) in Atlantic City, upon which
the Trump Organization wants to build a casino. In early April,
1981, writer and case Agent met with DONALD TRUMP. The purpose of
this meeting was for DONALD TRUMP to express his reservations about
building a casino in Atlantic City. TRUMP advised Agents that he
had read in the press media and had heard from various acquaintances
that Organized Crime elements were known to operate in Atlantic
City. TRUMP also expressed at this meeting, the reservation that
his life and those around him would be subject to microscopic
examination. TRUMP advised that he wanted to build a casino in
Atlantic City but he did not wish to tarnish his family's name

137-22152-A

DTT:ml
(2)

NY (137-19967)

inadvertently.  Agents advised TRUMP that he should carefully
think over his decision to build in Atlantic City, and carefully
prepare not only methods of securing employees' honesty, but also
corporate integrity.  TRUMP advised that he wished to cooperate
with the FBI if he did decide to build a casino.  The Agents that
were present advised although they were not in a position to speak
for the FBI, or to guarantee anything, that if he in fact wished
to build in Atlantic City and decided firmly on this matter, they
would be glad to re-discuss the situation without making any
commitments.

        After this initial meeting, the New York Office (NYO)
began to research Atlantic City and its various regulating bodies
as well as what evidence existed regarding Organized Crime influence
in that city.  At an Atlantic City conference, writer discussed
with Bureau officials and the Atlantic City Resident Agency, the
possibility that a proposed casino owner might be willing to
cooperate with the FBI.  In June, 1981, writer met again with
DONALD TRUMP and ROBERT TRUMP during which time they advised that
they felt confident that they wished to build a casino in Atlantic
City.  TRUMP advised writer, who was in the presence of the Case
Agent, that he, (TRUMP), wished to provide full disclosure during
the construction phase of this casino and subsequently, once the
casino was operational.  TRUMP stated in order to show that he was
willing to fully cooperate with the FBI, he suggested that they
use undercover Agents within the casino.  Writer advised TRUMP that
he could not speak for the FBI, and he could not make any agreements
or promises as per Bureau policy in this matter.  TRUMP asked
writer his personal opinion regarding whether he should build in
Atlantic City.  Writer advised TRUMP, on a personal level, not as
a matter of Bureau policy, that he, (writer), thought there were
easier ways that TRUMP could invest his money.  TRUMP asked writer
if he could attempt to introduce him to appropriate officials
in the FBI with whom he could discuss this matter.  Writer advised
TRUMP he would research this matter further and re-contact him.

- 2 -

NY (137-19967)

At this point, writer initiated steps with the Newark Office and the Atlantic City Resident Agency to begin planning an undercover proposal concerning the proposed TRUMP casino. This proposal, now in thoroughly finished state, was to be discussed with TRUMP by the SACs of the New York Office and the Newark Office on 10/1/81.

On 9/21/81, writer returned the call of DONALD TRUMP and subsequently talked to DONALD and ROBERT TRUMP via telephone. TRUMP advised writer that he traveled to Trenton, New Jersey on Wednesday of the previous week and had met with DGE official, MICKEY BROWN. TRUMP advised that BROWN told him that he had "no problem" with TRUMP's background and expected him to be licensed in the immediate future. BROWN, according to TRUMP, further stated that he had one problem and that involved captioned source. TRUMP stated that he told BROWN that source was the first individual to preach "honesty" to him regarding his dealings in Atlantic City. TRUMP advised that he also told BROWN that source had introduced him to two Agents of the FBI, (one of the names given was that of writer). TRUMP stated that BROWN told him that source was not candid with DGE regarding some questions, and that this might draw out the investigation. TRUMP advised writer that he told BROWN of source's relationship with the FBI only in the sense that it might "nip things in the bud", and prevent future problems. TRUMP stated that he talked with BROWN about nothing of a substantive nature, particularly involving any proposed undercover activity.

On the same day, writer and Case Agent talked with source. Source advised that he had been interviewed by DGE approximately a month and a half ago. DGE asked for documentation regarding source's business activities. Source advised that his attorney had inadvertently not sent DGE the appropriate documents, however, would do so now. Source further advised that DGE officials asked

- 3 -

NY (137-19967)

him about his relationship with the FBI based on a stack of
newspaper clippings which DGE officials had access to.  Source
declined to answer this question.

It should be emphasized that TRUMP is not aware
of source's relationship with the FBI and knows only that the
contacting Agents are acquaintances; however, writer and Case
Agent have repeatedly told TRUMP that they were not references
for source and cannot speak for source's business dealings.  The
TRUMPs have advised writer and Case Agent that source is involved
as a labor consultant to their firm.  They are aware that this is a
very rough business and that source knows people, some of whom
may be unsavory by the simple nature of the business.  On
9/21/81, source contacted MICKEY BROWN of DGE at TRUMP's request.
Before source could elaborate on the matter of his call, BROWN
told him that he, (BROWN), was attempting to talk with the
Newark Division of the FBI to verify some conversation(s) that
TRUMP had had with (BROWN).  Source advised BROWN that he was calling
regarding a different matter and the question of whether or not he
was a source of the FBI simply did not come up.  Source told BROWN
he was calling regarding a different matter and that his attorney
had inadvertently not sent appropriate business documentation to BROWN.
Source stated that he would do so now.  According to source,
he then asked BROWN, "is there anything else..."?, to which BROWN
responded, "no".  On 9/21/81, BROWN called the SAC, Newark Division,
and inquired regarding source.  SAC Newark advised BROWN that
he would get back to him.  On 9/22/81, SAC, Newark, called writer
regarding his conversation with BROWN and the matter of his
future response.

It should be emphasized that TRUMP advised writer he
did not talk with BROWN about anything concerning the proposed
undercover activity.  It should further be emphasized that source
is not aware of the matter of this proposed activity.

- 4 -

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PROPERTY OF THE PEOPLE, INC., *et al.*, )
 )
    PLAINTIFFS ) Civil Action No. 1:17-cv-1193 (JEB)
  vs. )
 )
DEPARTMENT OF JUSTICE, )
 )
    DEFENDANT )
 )

# EXHIBIT 145

FD-515 (Rev. 7-19-91)
**Accomplishment Report**
(Submit within 30 days from date of accomplishment)

ALL FBI INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 08-23-2018 BY

b6 -1, -5, -7
b7C -1, -5, -7
b7E -5

TO: Director, FBI

FROM: SAC, MIAMI
SUBJECT:

_____ ET AL
FIF
(00: MM)

Date _____ 4/17/92

Bureau File Number
**29B-MM-52247**

Field Office File Number
**WCC-1**

Squad or RA Number

Agent's Social Security No.

☐ X if case involves corruption of a public official (Federal, State or Local).

### Investigative Assistance or Technique Used
Rate each investigative Assistance or Technique used in connection with the accomplishment being claimed.

1 = Used, but did not help
2 = Helped, but only minimally
3 = Helped, substantially
4 = Absolutely essential

| | Rating | | Rating | | Rating | | Rating |
|---|---|---|---|---|---|---|---|
| 1. Acctg Tech Assistance | | 8. Eng. Sect. Tape Exams | | 15. Photographic Coverage | | 22. Telephone Toll Recs | |
| 2. Aircraft Assistance | | 9. Hypnosis Assistance | | 16. Polygraph Assistance | | 23. UCO Group I | |
| 3. Computer Assistance | | 10. Ident Div Assistance | | 17. Search Warrants Executed | | 24. UCO Group II | |
| 4. Consensual Monitoring | | 11. Informant Information | | 18. Show Money Usage | | 25. UCO Other | |
| 5. ELSUR FISC | | 12. Lab Div Exams | | 19. Survel Sqd (SOG) Asst | | 26. NCAVC/ VI-CAP | |
| 6. ELSUR Title III | | 13. Lab Div Field Support | | 20. SWAT Team Action | | 27. Visual Invest - Analysis (VIA) | |
| 7. Eng. Sect. Field Support | | 14. Pen Registers | | 21. Tech. Agt. or Tech Equip | | | |

**A. Preliminary Judicial Process** (Number of subjects)

| | Complaints | Informations | Indictments |
|---|---|---|---|
| | | 1 | |

**D. Recoveries, Restitutions, or Potential Economic Loss Prevented (PELP)** (Explain valuation in remarks)

| Property Type Code* | Recoveries | Restitutions | PELP Type Code* | Potential Economic Loss Prevented |
|---|---|---|---|---|
| | $ | $ 2,000.00 | | $ |
| | $ | $ | | $ |
| | $ | $ | | $ |

**B. Arrests, Locates, Summonses or Subpoenas Served** (No. of Subjects)

| | Subject Priority* A B C | |
|---|---|---|
| FBI Arrests - | | Subpoenas Served |
| FBI Locates - | | Criminal Summons |
| Local Arrests - | | Local Crim. Summons |
| FBI Subj. Resisted _____ ; Armed _____ | | |

**E. Civil Matters**

| | Civil Suits Amount of Suit | Government Defendant | Government Plaintiff |
|---|---|---|---|
| RICO -Civil Convictions | $ | | |
| No. of Subj. | Settlement of Award $ | $ | Enter AFA Payment Here |

**C. Release of Hostages or Children Located:** (Number of Hostages or Children Located)

Hostages Held By Terrorists: _____  All Other Hostage Situations: _____
Missing or Kidnaped Children Located: _____

**F. Administrative Sanctions**

| Subject 1 | Subject Description Code* - |
|---|---|
| ☐ Suspension ☐ Debarment | Time Frame - Years: _____ Months: _____ ☐ Permanent |

**G. Final Judicial Process:** Judicial District _____ SD _____ FL
District / State
Conviction or Pretrial Div. Date **2/13/92** Sentence Date **4/16/92** No. of Subjects _____ Acquitted _____ Dismissed _____

b7E -5

**Subject 1**

| ☒ Felony | Conviction | | | Combined Sentence | | | | |
|---|---|---|---|---|---|---|---|---|
| ☐ Misdemeanor | Title | Section | Counts | In-Jail Yrs. Mos. | Suspended Yrs. Mos. | Probation Yrs. Mos. | | |
| ☐ Parole Revocation | 18 | 371 | 1 | 6 | | 2 | | |
| ☐ Probation Revocation | | | | Total Fines $ 50.00 | | | | |
| ☒ Plea ☐ Trial | | | | Add consecutive sentences together. Enter longest single concurrent sentence. Do not add concurrent sentences together. Sentence 10 yrs.- 8 yrs susp. = 2 yrs. In-Jail. | | | | |
| ☐ Pretrial Diversion | | | | | | | | |

**Subject 2**

| ☐ Felony | Conviction | | | Combined Sentence | | | | |
|---|---|---|---|---|---|---|---|---|
| ☒ Misdemeanor | Title | Section | Counts | In-Jail Yrs. Mos. | Suspended Yrs. Mos. | Probation Yrs. Mos. | | |
| ☐ Parole Revocation | 18 | 480 | 1 | 4 | | 2 | | |
| ☐ Probation Revocation | | | | Total Fines $ 25.00 | | | | |
| ☒ Plea ☐ Trial | | | | Add consecutive sentences together. Enter longest single concurrent sentence. Do not add concurrent sentences together. Sentence 10 yrs.- 8 yrs susp. = 2 yrs. In-Jail. | | | | |
| ☐ Pretrial Diversion | | | | | | | | |

*Attach additional forms if reporting final judicial process on more than two subjects, and submit a final disposition form (R-84) for each subject.*

**H. Identifying Data:** For every subject reported in Sections A, B, E, F, or G above, provide the following: Attach additional forms for more than four subjects.

| Name | Date of Birth | Race* | Sex | Place of birth (if available) | Social Security Number (if available) |
|---|---|---|---|---|---|
| PAULA ELIZABETH CASTELLANOS | | | | | b6 -5, -7 |
| EFRAIN CASTELLANOS | | | | | b7C -5, -7 |
| | | | | | |

**Explanation of accomplishment claimed:**

On 2/13/92, PAULA CASTELLANOS entered a plea of guilty to Count 1 of the indictment charging her with violation of T. 18, USC, 371, and EFRAIN CASTELLANOS entered a plea of guilty to a misdemeanor violation of T 18, USC, 480. On 4/16/92, PAULA was sentenced to 6 months in home confinement, 2 years probation, ordered to pay $1,000 restitution and $50 assessment. EFRAIN was sentenced to 4 months in home confinement, 2 yrs. probation, ordered to pay $1,000 restitution and assessed $25.

2 - Bureau
2 - Field Office
• See codes on reverse side.

(1 - 29B-MM-52247)    (1 - 66-418)    ROD:jkj    (4)

29B-52247-109

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PROPERTY OF THE PEOPLE, INC., *et al.*,  )
                                         )
                    PLAINTIFFS           )   Civil Action No. 1:17-cv-1193 (JEB)
        vs.                              )
                                         )
DEPARTMENT OF JUSTICE,                   )
                                         )
                    DEFENDANT            )
_____      )

# EXHIBIT 15

FD-209 (Rev. 11-24-72)
OPTIONAL FORM NO. 10
MAY 1962 EDITION
GSA GEN. REG. NO. 27          5010-106

UNITED STATES GOVERNMENT

# *Memorandum*

TO     : SAC ADIC, LOS ANGELES [                ]     DATE: 1/27/76          b2
                                                                            b6
                                                                            b7C
FROM   : SA [                          ]                                    b7D

SUBJECT: [                    ]

| Dates of Contact |
| 1/16/76 |

File #s on which contacted (Use Titles if File #s not available or when CI provides positive information)

IOC                                                                         b6
OO: Los Angeles                                                             b7C
(LA File [            ]

Purpose and results of contact

☐ NEGATIVE
☒ POSITIVE
☒ STATISTIC

              Information herein obtained confidentially;
         informant's name is not to be disclosed in report or
         otherwise unless it has been decided definitely that
         he is to be a witness in a trial or hearing.

☐ POSITIVE ASSIGNMENT GIVEN (Ghetto only)

Has informant shown any indication of emotional instability, unreliability or
furnishing false information?
                                No

☒ Informant certified that he has furnished all information obtained by him
since last contact, including information concerning narcotics.

PERSONAL DATA

Coverage
criminal
139-4-70-7

1 - [            ] (attachment 1)
2 - 139-440 (attachment 2)
1 - 139-430 (attachment 1) (Info)

SEARCHED____ INDEXED____
SERIALIZED____ FILED____
JAN 29 1976

WOH/pla
(4)

b2
b6
b7C
b7D

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PROPERTY OF THE PEOPLE, INC., *et al.*,   )
                                          )
                    PLAINTIFFS            )   Civil Action No. 1:17-cv-1193 (JEB)
          vs.                             )
                                          )
DEPARTMENT OF JUSTICE,                    )
                                          )
                    DEFENDANT             )
                                          )

# EXHIBIT 16

Automated Serial Permanent Charge-Out
FD-5a (1-5-94)

Date: 04/27/06  Time: 12:03

Case ID: 92L-PH-99239-HRA  Serial: 6

Description of Document:

  Type : OTHER
  Date : 12/01/05
  To   : PHILADELPHIA
  From : PHILADELPHIA
  Topic: INTERGENCY AGREEMENT

Reason for Permanent Charge-Out:

  Case unconsolidation.

Unconsolidated back to:

  Case ID: 194A-PH-C99518  Serial: 5

Employee:

b6 -1
b7C -1



SEARCHED_____ INDEXED_____
SERIALIZED_____ FILED_____

APR 27 2006

FBI - PHILADELPHIA

People-1057

92L-PH-99239-HRA-6

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PROPERTY OF THE PEOPLE, INC., *et al.*,    )
                                            )
                    PLAINTIFFS              )    Civil Action No. 1:17-cv-1193 (JEB)
          vs.                               )
                                            )
DEPARTMENT OF JUSTICE,                      )
                                            )
                    DEFENDANT               )
                                            )

# EXHIBIT 17

| | |
|---|---|
| **From:** | Tilghman, Michael (USADC) |
| **To:** | Jeffrey Light |
| **Subject:** | Property of the People, Inc., et al. v. Department of Justice, Civil action No. 17-1193 |
| **Date:** | Tuesday, July 14, 2020 3:29:42 PM |

Mr. Light:

Please see the below responses to the remaining four of the six questions you posed.

*1. Could the FBI provide a more detailed explanation of the destruction of documents (paragraph 55)?*

RESPONSE:  The FBI provided information regarding destruction of records via email on or around June 17, 2020.

*2. Could the FBI re-check whether the investigations to which Exemption 7(A) was applied have concluded?*

RESPONSE:  The FBI re-checked all of its Exemptions 7(A) claims.  As a result of this check, the FBI is releasing a file number on Bates page People-3862 as the investigation is no longer pending.  The remaining 7(A) claims were confirmed valid, as investigations are still pending.

*3. Is the FBI contending that only the file numbers are exempt under 7(A) or also that the subject matter of the investigations is also exempt?  (Paragraph 98)*

RESPONSE:   The FBI is asserting Exemption 7(A) to exempt both the file numbers and the subject matter pertaining to pending investigations.

*4. I'm not clear about the status of records relating to the 1981 report, which is discussed in the next-to-last paragraph of the Court's Opinion.  What bates number was assigned to the documents relating to the 1981 report and which paragraph(s) of the draft declaration justify any withholdings?*

RESPONSE:   Paragraphs 148-161iii of the Third Declaration of David M. Hardy dated February 7th, 2020 provide the FBI's justification for its assertions of FOIA Exemptions (b)(7)(D) and (b)(7)(E) to withhold in full records responsive to Plaintiffs' request relating to file numbers 137-NY-19967 and 137-22152, including the documents provided by Plaintiffs and

referenced in this question.  RIDS was unable confirm these records were placed in the public domain by the FBI.  Therefore, RIDS did not consider the release of these records an authorized official disclosure by the agency.  The FBI does not routinely release third party informant records to the public.

*5. There is not much information provided by CBP about their withholdings.  Could additional information be provided either through the FBI or a separate declaration from CBP (similar to what EOUSA did)?*

RESPONSE:   The FBI reached out to CBP on multiple occasions requesting additional information.  Unfortunately, those attempts have been unsuccessful.   The FBI is unaware of CBP's current operations status in the face of the COVID-19 pandemic.

*6. What is the nature of the documents withheld by ICE?  Are they printouts from a particular database or are they specific forms?  We're trying to figure out whether there is material that can be segregated.*

RESPONSE:  The FBI provided information regarding ICE documents via email on or around June 17, 2020.

Michael A. Tilghman II
Assistant United States Attorney
Civil Division
United States Attorney's Office
  for the District of Columbia
555 Fourth Street, N.W.
Washington, D.C. 20530
(202) 252-7113
michael.tilghman@usdoj.gov

NOTICE:  The contents of this email and the attachments, if any, may contain confidential or privileged information legally protected from disclousure. If you are not the intended recipient of this message or if this message has been addressed to you in error, please immediately alert the sender by reply email and then delete this message, any copies and any attachments. Unauthorized interception, review, use or disclosure is prohibited.