UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **PROPERTY OF THE PEOPLE, INC.**, *et al.*, <br><br>        **Plaintiffs,** <br><br>        v. <br><br>**DEPARTMENT OF JUSTICE,** <br><br>        **Defendant.** | Civil Action No.  17-1193 (JEB) |

## MEMORANDUM OPINION

While the media continues to cover investigations of former President Donald Trump's businesses, non-profit Plaintiffs in this Freedom of Information Act case hunt different game. They seek records discussing Trump's connection with a two-decades-old gambling investigation by the Federal Bureau of Investigation. After the Department of Justice withheld certain documents, Plaintiffs sued. In competing Motions for Summary Judgment, the parties now wrangle with a number of FOIA exemptions as applied to diverse document categories. To aid its decisionmaking, the Court completed its own *in camera* review, and it now delivers a miscellany of rulings: it will affirm the Government's nondisclosure of some records, order the release of others, and require some further segregability analysis on still more.

### I.     Background

Although extended by the COVID-19 pandemic, the procedural history of this case is not complicated. Plaintiffs — government-transparency organization Property of the People, investigative reporter Jason Leopold, and PhD candidate Ryan Shapiro — filed a FOIA request with the FBI on March 16, 2017, for records "mentioning or referring to" Donald John Trump

1

from June 14, 1946, through June 15, 2015. See ECF No. 1 (Compl.), ¶¶ 1–3, 10–11. They also requested records relating to several FBI case files, which they believed contained documents referring to Trump by name. Id., ¶ 11. After acknowledging receipt of the request, DOJ issued a Glomar response, refusing to confirm or deny the existence of law-enforcement records responsive to Plaintiffs' requests. See Property of the People v. DOJ, 310 F. Supp. 3d 57, 62–63 (D.D.C. 2018); ECF No. 12–1 (First Declaration of David M. Hardy), ¶ 8. An unsuccessful administrative appeal of that response prompted Plaintiffs to file this suit on June 18, 2017. See Compl., ¶ 14.

After this Court rejected both the propriety of Defendant's Glomar response and Plaintiffs' cross-motion for summary judgment, Property of the People, 310 F. Supp. 3d at 73, the parties began a long exchange of documents and status reports drawn out by pandemic-related delays. All told, DOJ identified 4,205 responsive pages, releasing more than half that number (at least in part) to Plaintiffs. See ECF No. 55 (Def. MSJ) at 1. It withheld 1,554 pages in part and 988 pages in full, invoking FOIA Exemptions 3, 6, 7(A), 7(C), 7(D), and 7(E) in its most recent Motion for Summary Judgment. Id. at 1, 7–29. Narrowing the dispute, Plaintiffs in their latest Cross-Motion contest the applicability of those exemptions with respect to only 116 pages. See ECF No. 57 (Pl. MSJ & Opp.) at 7–30; ECF No. 62 (Pl. Reply) at 2–29

Following the completion of briefing, the Court, in an effort to better understand the withholdings at issue, ordered DOJ to submit clean and redacted copies of all disputed documents for *in camera* review. See Minute Order (2/24/21). Having now completed its review, the Court is ready to rule.

**II.     Legal Standard**

Summary judgment must be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, 477 U.S. 242, 247–48 (1986); Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006). A fact is "material" if it is capable of affecting the substantive outcome of the litigation. See Liberty Lobby, 477 U.S. at 248; Holcomb, 433 F.3d at 895. A dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Scott v. Harris, 550 U.S. 372, 380 (2007); Holcomb, 433 F.3d at 895. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion" by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

FOIA cases typically and appropriately are decided on motions for summary judgment. See Brayton v. Off. of the U.S. Trade Representative, 641 F.3d 521, 527 (D.C. Cir. 2011). In a FOIA case, a court may grant summary judgment based solely on information provided in an agency's affidavits or declarations when they "describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." Larson v. Dep't of State, 565 F.3d 857, 862 (D.C. Cir. 2009) (citation omitted). Such affidavits or declarations "are accorded a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" SafeCard Servs., Inc. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quoting Ground Saucer Watch, Inc. v. CIA, 692 F.2d 770, 771 (D.C. Cir. 1981)). "FOIA expressly

3

places the burden 'on the agency to sustain its action' and directs the district courts to 'determine the matter de novo.'" U.S. Dep't of Justice v. Reporters Comm. for Freedom of Press, 489 U.S. 749, 755 (1989) (quoting 5 U.S.C. § 552(a)(4)(B)).

### III.     Analysis

Congress enacted FOIA "to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." Dep't of Air Force v. Rose, 425 U.S. 352, 361 (1976) (citation omitted). The statute promotes these aims by providing that "each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules[,] . . . shall make the records promptly available to any person." 5 U.S.C. § 552(a)(3)(A). The Government need not, however, turn over requested information that falls into one of nine statutorily created exemptions from FOIA's broad directive. Id. § 552(b)(1)–(9). This Court can compel the release of any records that do not satisfy the requirements of at least one exemption. See Reporters Comm., 489 U.S. at 755.

A "veritable avalanche of FOIA-related precedent" guides this Court's determination of whether the Government has carried its burden of establishing that a given exemption applies. Ullah v. CIA, 435 F. Supp. 3d 177, 182 (D.D.C. 2020). In order to show that certain information is exempt from FOIA, "an agency may file 'affidavits describing the material withheld and the manner in which it falls within the exemption claimed.'" Bin Ali Jaber v. U.S. Dep't of Def., 293 F. Supp. 3d 218, 224 (D.D.C. 2018) (quoting King v. U.S. Dep't of Justice, 830 F.2d 210, 217 (D.C. Cir. 1987)). Ultimately, "when an agency seeks to withhold information, it must provide a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant." Morley v. CIA, 508 F.3d 1108, 1122 (D.C. Cir. 2007) (quoting King, 830 F.2d at 219). "[A]n agency's justification for invoking a FOIA exemption is sufficient if it

appears 'logical' or 'plausible.'" Larson, 565 F.3d at 862 (quoting Wolf v. CIA, 473 F.3d 370, 374–75 (D.C. Cir. 2007)).

Even where a particular exemption applies, FOIA requires that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt." 5 U.S.C. § 552(b). While DOJ is "entitled to a presumption that [it] complied with the obligation to disclose reasonably segregable material," Hodge v. FBI, 703 F.3d 575, 582 (D.C. Cir. 2013) (alteration in original) (citation omitted), this presumption of compliance does not obviate the Government's obligation to fully explain its decisions on segregability. See Mead Data Cent., Inc. v. U.S. Dep't of Air Force, 566 F.2d 242, 261–62 (D.C. Cir. 1977). To do so, the agency must provide "a 'detailed justification' and not just 'conclusory statements' to demonstrate that all reasonably segregable information has been released." Valfells v. CIA, 717 F. Supp. 2d 110, 120 (D.D.C. 2010) (quoting Mead Data, 566 F.2d at 261). "[R]easonable specificity" can be established through a "combination of the Vaughn index and [agency] affidavits." Johnson v. Exec. Off. for U.S. Att'ys, 310 F.3d 771, 776 (D.C. Cir. 2002) (internal quotation marks and citation omitted).

Here, Plaintiffs have challenged a bevy of DOJ's withholdings, justified by Exemptions 3, 6, 7(A), 7(C), 7(D), and 7(E). For clarity, the Court proceeds through each exemption *seriatim*, analyzing like documents together.

A. Exemption 3

Exemption 3 covers records "specifically exempted from disclosure by statute" provided that such statute either "(i) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue; or (ii) establishes particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3)(A). Defendant has

5

cited this exemption in withholding two categories of documents: 1) "six (6) []related documents concerning the production of confidential documents in response to a Federal Grand Jury subpoena" under Federal Rule of Criminal Procedure 6(e); and 2) "six (6) related documents seeking an order from a court authorizing limited disclosure of the [Title III] related information" under Title III of the Omnibus Crime Control and Safe Streets Act of 1968. See ECF No. 58 (Def. Reply & Opp). at 5–6 (second alteration in original) (citation omitted); see also ECF No. 55-3 (Def. Exhs.), Exh. X (Vaughn Index) at 1870–91, 1656–74. The Court looks at each separately.

### 1. *Federal Rule of Criminal Procedure 6(e)*

There is no disagreement that Federal Rule of Criminal Procedure 6(e) qualifies as a "statute" under Exemption 3. See Pl. Reply at 20; Def. Reply & Opp. at 5; see also Fund for Const. Gov't v. Nat'l Archives & Recs. Serv., 656 F.2d 856, 867–68 (D.C. Cir. 1981) (finding Rule 6(e)'s disclosure ban "falls within" Exemption 3). That Rule, furthermore, prohibits the disclosure of "matter[s] occurring before the grand jury." Fed. R. Crim. P. 6(e)(2)(B). At issue then is whether disclosure of the grand-jury documents here would reveal such matters. See Fund for Const. Gov't, 656 F.2d at 869. As the D.C. Circuit recently explained, "Rule 6(e) does not draw a veil of secrecy over all matters occurring in the world that happen to be investigated by a grand jury. Instead, the touchstone is whether the information sought would reveal something about the grand jury's identity, investigation, or deliberation." Labow v. U.S. DOJ, 831 F.3d 523, 528 (D.C. Cir. 2016) (cleaned up) (citation omitted).

The Court's *in camera* review demonstrates that the information Plaintiffs seek would indeed reveal much about the grand jury's activity here. The six documents contain "information that identifies specific records subpoenaed by a federal grand jury; and copies of

specific records," ECF No. 55-2 (First Declaration of Michael G. Seidel), ¶ 67, disclosure of which "would reveal the recipient of the Federal Grand Jury subpoena and the identity of the subjects of the Federal Grand Jury investigation." ECF No. 59-1 (Second Declaration of Michael G. Seidel), ¶ 16. Such information "tend[s] to reveal some secret aspect of the grand jury's investigation," especially "the strategy or direction of the investigation." Hodge, 703 F.3d at 580 (quoting Senate of P.R. *ex rel.* Judiciary Comm. v. DOJ, 823 F.2d 574, 582 (D.C. Cir. 1987)). For that reason, DOJ properly withheld these items.

### 2. *Title III of the Omnibus Crime Control and Safe Streets Act of 1968*

Title III governs the lawful interception and recording of communications by federal law-enforcement agencies. "In enacting Title III, Congress sought to regulate comprehensively both the use of electronic surveillance as an investigative tool and the disclosure of materials obtained through such surveillance." Lam Lek Chong v. U.S. Drug Enf't Admin., 929 F.2d 729, 732 (D.C. Cir. 1991). As before, Plaintiffs do not dispute that Title III qualifies as a statute under Exemption 3. See Pl. MSJ & Opp. at 18; Pl. Reply at 19. The Government seeks to withhold "Court-ordered lawful interception[s] and recording[s]." Def. MSJ at 9 (citation omitted). Plaintiffs concede that any "details of information gathered through the use of lawful recording" are properly redacted. See Pl. Reply at 20 (citation omitted).

The problem here is somewhat unusual. The documents at issue are 2006 filings by the Government and resulting court orders concerning the release of Title III material to another law-enforcement agency that was conducting an investigation related to the surveillance. In the nineteen pages at issue, there is very little discussion of the information that was intercepted. As a result, the Court would typically order the release of most of the material. All of the pleadings

and orders, however, were sealed by the issuing federal court. If they remain sealed, this Court has no power to order their release.

The Government, which did not mention this issue in briefing, must first determine if the sealing orders remain in effect. If so, it cannot release the documents. If the orders are no longer extant, then the Government must release the material unrelated to the actual interceptions, although, pursuant to Exemption 7(C), discussed *infra*, it may redact all names of individuals and other identifying information mentioned in the documents.

B. Exemption 7(A)

Exemption 7(A) permits an agency to withhold "records or information compiled for law enforcement purposes" when production of such records "could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A). In evaluating the applicability of the exemption, the Court must balance FOIA's "goal of broad disclosure," Milner v. Dep't of Navy, 562 U.S. 562, 571 (2011) (citation omitted), with Exemption 7(A)'s recognition of "law enforcement agencies['] . . . legitimate needs to keep certain records confidential, lest the agencies be hindered in their investigations." NLRB v. Robbins Tire & Rubber Co., 437 U.S. 214, 224 (1978). This Court must also "give deference to an agency's predictive judgment of the harm that will result from disclosure of information." CREW v. DOJ, 746 F.3d 1082, 1098 (D.C. Cir. 2014).

DOJ here has redacted a single case number written on a newspaper article about Trump and his criticism of then-Governor of Pennsylvania Ed Rendell. See Pl. MSJ & Opp. at 13; Vaughn Index at 1021. Plaintiffs argue only that Justice has not shown that disclosure of that case number would interfere with ongoing enforcement proceedings. See Pl. MSJ & Opp. at 16–17; Pl. Reply at 17–18.

According to the Government, the redacted case number directly implicates "an ongoing investigation with charges currently pending," where disclosure may "negatively impact the integrity of the ongoing investigation and cause harm to the pending prosecution." Second Seidel Decl., ¶ 12. While "the Government must be somewhat obscure in its public filings about the effect of disclosure so as not to risk spilling the very information it seeks to keep secure," Cable News Network, Inc. v. FBI, 298 F. Supp. 3d 124, 129 (D.D.C. 2018), DOJ here has provided substantive explanations for how disclosure may allow an individual currently under investigation to "analyze the information in the documents pertinent to the investigation" and identify potential witnesses or "counteract evidence developed by investigators." First Seidel Decl., ¶ 104. It has thus met its burden in showing that disclosure could interfere with ongoing enforcement proceedings.

    C.  Exemptions 6 and 7(C)

Exemption 6 protects "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Exemption 7(C) excludes from disclosure "records of information compiled for law enforcement purposes . . . to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy." Id. § 552(b)(7)(C). Both provisions require agencies and reviewing courts to "balance the privacy interests that would be compromised by disclosure against the public interest in release of the requested information." Beck v. DOJ, 997 F.2d 1489, 1491 (D.C. Cir. 1993) (quoting Davis v. DOJ, 968 F.2d 1276, 1281 (D.C. Cir. 1992)).

Although both exemptions require agencies and reviewing courts to undertake the same weighing of interests, the balance tilts more strongly toward nondisclosure in the context of

Exemption 7(C) because "Exemption 7(C)'s privacy language is broader than the comparable language in Exemption 6." Reporters Comm., 489 U.S. at 756. Courts have accordingly held that Exemption 7(C) "establishes a lower bar for withholding material" than Exemption 6. ACLU v. DOJ, 655 F.3d 1, 6 (D.C. Cir. 2011); see also Beck, 997 F.2d at 1491. It governs here (rather than Exemption 6) because the documents were indeed compiled for law-enforcement purposes. See 5 U.S.C. § 552(b)(7)(C); id. § 552(b)(6).

The documents, which were largely withheld in full, include "[h]andwritten interview notes for a third party individual," Vaughn Index at 19–33, 35–39, 41–43; "FBI Form[s] FD-302 documenting interview[s] with third party individual[s]," id. at 299–304, 307–10, 4203–05; "[r]eports documenting information provided by a third party individual" or "related to third party individuals of investigative interest," id. at 70–73, 75, 86, 90, 398–401; "documents gathered from a third party," id. at 2690–91; the name of the Port Director of the Los Angeles International Airport on a letter responding to a FOIA request, id. at 192; Pl. MSJ & Opp. at 11; and "FBI Electronic Communication (EC) documenting information gathered for the captioned investigation." Vaughn Index at 1967.

The Court begins with an inquiry into "whether disclosure of the files would compromise a substantial, as opposed to *de minimis*, privacy interest," for "if no significant privacy interest is implicated FOIA demands disclosure." Multi Ag Media LLC v. Dep't of Agric., 515 F.3d 1224, 1229 (D.C. Cir. 2008) (cleaned up) (citation omitted). "[T]hird parties who may be mentioned in investigatory files, as well as . . . witnesses and informants who provided information during the course of an investigation," Nation Mag., Wash. Bureau v. U.S. Customs Serv., 71 F.3d 885, 894 (D.C. Cir. 1995), have a substantial privacy interest "in not being associated with an investigation." Kimberlin v. Dep't of Justice, 139 F.3d 944, 949 (D.C. Cir. 1998). "The same is

10

true for government officials involved in the investigation." Ball v. U.S. Marshal Serv., No. 19-1230, 2021 WL 254070, at *3 (D.D.C. Jan. 26, 2021) (citing Lesar v. U.S. DOJ, 636 F.2d 472, 487–88 (D.C. Cir. 1980)). To the extent, then, that individuals can be identified via information contained in the documents at issue, there is little question that "[t]he privacy interest at stake is substantial." SafeCard Servs., Inc., 926 F.2d at 1205.

The countervailing public interest presented by Plaintiffs in no way overcomes the privacy interest third parties have in keeping their identities unassociated with federal investigations. Under D.C. Circuit precedent, unless information identifying third parties "is necessary in order to confirm or refute compelling evidence that the agency is engaged in illegal activity, such information is exempt from disclosure." Id. at 1206; see also Nation Mag., 71 F.3d at 896 (where that is not the case, "to the extent any information contained in 7(C) investigatory files would reveal the identities of individuals who are subjects, witnesses, or informants in law enforcement investigations, those portions of responsive records are categorically exempt from disclosure under Safecard."). As there is no evidence of such misconduct here, Defendant's withholdings fit well within the ambit of Exemption 7(C) where individuals can be identified.

Plaintiffs have no argument with this, conceding that DOJ may withhold specifically identifying information like names, titles, employment information, or aliases. See Pl. Reply at 2, 12, 16, 21. But this does not entirely answer the inquiry under 7(C). The exemption protects not only actual identities, but also other information that may reveal the identity of an individual without naming him explicitly. See, e.g., Nation Mag., 71 F.3d at 896 (looking to whether release would "reveal the identities of individuals"). The Court must thus determine whether disclosure of these documents without specific names, titles, and addresses would still allow identification of individuals and "compromise a substantial . . . privacy interest." Multi Ag

11

Media LLC, 515 F.3d at 1229. Because the documents contain identifying details revealed in interviews, the Court finds that even with the redactions supported by Plaintiffs, release would invade the interest third-party individuals have in remaining unassociated with federal investigations. DOJ, therefore, appropriately invoked 7(C).

That does not answer Plaintiffs' rejoinder that some information in these records is surely segregable. See Pl. Reply at 5, 8, 14, 16. But the Court's *in camera* review reveals that the information here is fully intertwined with the content of the records. "[T]he non-exempt information cannot be reasonably segregated without either compromising the purpose of the FOIA exemptions or offering meaningless words or phrases." Blixseth v. U.S. Immigrations & Customs Enf't, No. 19-1292, 2020 WL 210732, at *7 (D.D.C. Jan. 14, 2020) (citing Mays v. DEA, 234 F.3d 1324, 1327 (D.C. Cir. 2000)). The Government's withholdings are appropriate.

D. Exemption 7(D)

Exemption 7(D) excludes from disclosure "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to disclose the identity of a confidential source . . . [who] furnished information on a confidential basis." 5 U.S.C § 552(b)(7)(D). "[T]he exemption is thus properly invoked only where a source provided information based upon an express grant of confidentiality or 'in circumstances from which such an assurance could reasonably be inferred.'" Montgomery v. IRS, 330 F. Supp. 3d 161, 170 (D.D.C. 2018) (quoting Dep't of Justice v. Landano, 508 U.S. 165, 172 (1993)).

The Government has invoked 7(D) to withhold in their entirety two subpoenas and an attachment "issued for the purpose of rendering assistance to a foreign government." Second Seidel Decl., ¶ 5; see also Vaughn Index at 45–46, 49–50, 51. It claims that disclosure would

reveal a confidential relationship with a foreign government, and that "the foreign government at issue expressly requested its relationship with the FBI to be kept confidential." Second Seidel Decl., ¶ 5. Plaintiffs retort that "it is unclear how disclosure of the subpoena would reveal that the FBI is assisting <u>any</u> foreign government with an investigation since the FBI typically issues subpoenas in connection with its own investigations." Pl. Reply at 10.

While Plaintiffs' complaint is understandable, DOJ has met its burden. "Exemption 7(D) differs from other FOIA exemptions in that its applicability depends not on the specific factual contents of a particular document; instead, the pertinent question is whether the information at issue was furnished by a 'confidential source' during the course of a legitimate criminal law investigation." <u>Lesar</u>, 636 F.2d at 492. Here, the Government has provided affidavits supporting its claim that the foreign government at issue "provided information under an express assurance of confidentiality" during the course of a cooperative investigation. See <u>Landano</u>, 508 U.S. at 172 (citation omitted); <u>see also</u> First Seidel Decl., ¶ 112; Second Seidel Decl., ¶ 5. It has thus done more than make "bald assertion[s] that express assurances were given," <u>Billington v. U.S. Dep't of Justice</u>, 233 F.3d 581, 584 (D.C. Cir. 2000), and it has demonstrated the agency's policy and practice with regard to foreign governments as well as specific facts as to this government and its confidential relationship.

Through its review, the Court concludes that release of the documents at issue would directly violate that assurance of confidentiality. Further, it finds nothing of value to segregate given the length of the documents and the interwoven nature of the information. DOJ thus appropriately withheld these documents.

E. Exemption 7(E)

The Government has last partially withheld three pages of surveillance records under Exemption 7(E), which authorizes the withholding of law-enforcement records that contain techniques for law-enforcement investigations. See Vaughn Index at 3960, 4018, 4020; see also 5 U.S.C. § 552(b)(7)(E). On the pages at issue, Defendant has redacted the dates of three instances of physical surveillance as well as the surveillance logs themselves for two separate occasions.

This Court recently explained the factors it considers under 7(E):

> In order for the Government to invoke the "techniques and procedures" prong of 7(E), it must demonstrate that its withholdings meet three basic requirements. First, it must show that the documents were in fact "compiled for law enforcement purposes" and not for some other reason. 5 U.S.C. § 552(b)(7)(E). Second, the Government must establish that the records contain law-enforcement techniques and procedures that are "generally unknown to the public." Nat'l Whistleblower Ctr. v. Dep't of Health & Human Servs., 849 F. Supp. 2d 13, 36 (D.D.C. 2012) (quoting Albuquerque Publ'g Co. v. Dep't of Justice, 726 F. Supp. 851, 857 (D.D.C. 1989)). Finally, it must demonstrate that disclosure "could reasonably be expected to risk circumvention of the law." Id. (quoting 5 U.S.C. § 552(b)(7)(E)).

Blixseth, 2020 WL 210732, at *6 (first citation modified).

There is no dispute that the records here meet the first requirement: surveillance logs sit in the heartland of law-enforcement records. DOJ's luck runs out at the second hurdle. All parties agree that physical surveillance in the form of a law-enforcement agent watching an individual and reporting her movements is generally known to the public. See Pl. Reply at 22; First Seidel Decl., ¶ 125; Second Seidel Decl., ¶ 20 ("Physical surveillance is indeed a well-known technique.").

14

This should be the end of the matter, but the Government claims that 7(E) also protects "the non-public details of when/where/how the FBI conducted the surveillance <u>in this particular investigation</u>." Second Seidel Decl., ¶ 20. In Defendant's view, releasing the dates and logs from surveillance over twenty years ago "would allow current and future subjects of FBI investigations and other potential criminals to develop and utilize countermeasures to defeat or avoid different types of surveillances." First Seidel Decl., ¶ 125. The Court need not turn to the out of circuit precedent invoked by Plaintiffs, <u>see</u> Pl. Reply at 23, to reject this argument. Although 7(E) "sets a relatively low bar for [agencies] to justify withholding[s]," <u>Blackwell v. FBI</u>, 646 F.3d 37, 42 (D.C. Cir. 2011), DOJ's explanation here fails to demonstrate "that release of [these] document[s] might increase the risk 'that a law will be violated or that past violators will escape legal consequences.'" <u>Pub. Employees for Envtl. Responsibility</u>, 740 F.3d at 205 (quoting <u>Mayer Brown LLP v. IRS</u>, 562 F.3d 1190, 1193 (D.C. Cir. 2009)). Having reviewed these logs, the Court finds nothing that bad actors could make use of, and the Government has generally agreed that logs memorializing the physical surveillance of a subject to report his movements is not the kind of law-enforcement technique protected by 7(E). Defendant's withholdings under Exemption 7(E) are improper, and the relevant documents should be disclosed. That said, any names, addresses, or identifying information may be redacted under 7(C).

**IV.  Conclusion**

For these reasons, the Court will grant in part and deny in part Defendant's Motion for Summary Judgment, and it will grant in part and deny in part Plaintiffs' Cross-Motion for

Summary Judgment. A separate Order that issues contemporaneously will set forth how the parties should proceed.

/s/ *James E. Boasberg*<br>JAMES E. BOASBERG<br>United States District Judge

Date: April 29, 2021