UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| PROPERTY OF THE PEOPLE, INC, *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 17-1193 (JEB) |
| DEPARTMENT OF JUSTICE, | ) ) ) | |
| Defendant. | ) ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiffs, Property of the People, Inc., Jason Leopold, and Ryan Noah Shapiro (collectively, "Plaintiffs"), sued Defendant, the U.S. Department of Justice (the "Department"), under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq.*, seeking to learn whether the Federal Bureau of Investigation ("FBI") has records related to certain FBI file numbers and Donald J. Trump before he became President. The Court has ruled on two previous motions for summary judgment. All that remains for this Court's review is whether the FBI has satisfied its segregability obligations with respect to two informant files—numbered 1166-LV-29911 and 137-NY-19967—all pages from which the FBI has withheld in full under one or a combination of FOIA Exemptions 3, 6, 7(A), 7(C), 7(D), and 7(E), 5 U.S.C. §§ 552(b)(3), (6), 7(A), 7(C), 7(D), 7(E). As discussed in more detail below, the FBI has done so because the withheld information was provided by a confidential informant or the exempt information is so intertwined with non-exempt information that segregation for release is unreasonable. Accordingly, the Court should grant Defendant's Motion for Summary Judgment.

# BACKGROUND

## I. Factual Background

On June 18, 2017, Plaintiffs sued the Department under FOIA, alleging that they submitted a FOIA request on March 16, 2017 to the FBI that sought, among other things, all records from June 14, 1946 through June 15, 2015 "'mentioning or referring to . . . Donald John Trump,'" including records in FBI file numbers 194-NK-88595, 166-LV-29911, 137-NY-19967, 137-22152, and 92-PH-99239, which Plaintiffs alleged "contained documents referring to Donald Trump by name." Statement of Undisputed Material Facts ("SUMF") ¶ 1. Plaintiffs further alleged that by separate letters dated March 23, 2017, the FBI asserted a *Glomar* response pursuant to FOIA Exemptions 6 and 7(C) regarding the existence of any records relating to Mr. Trump and pursuant to FOIA Exemption 7(E) regarding the existence of records relating to file numbers 137-NY-19967 and 137-22152. SUMF ¶ 2. Plaintiffs claimed that the Department violated FOIA because the FBI refused to search for and disclose records responsive to their FOIA request.[1] SUMF ¶ 3.

## II. Procedural History

This is the parties' third round of summary judgment briefing. The procedural history of this case is set forth in the Court's April 23, 2018, April 29, 2021, and July 2021 Memorandum Opinions. *See* ECF Nos. 25, 65, 68.

On September 23, 2021, the FBI provided Plaintiff a declaration addressing the categories of information withheld in two confidential informant files numbered 1166-LV-29911 and 137-NY-19967. The parties informed the Court in their October 1, 2021 Joint Status Report (ECF No.

---

[1] Plaintiffs also maintained that the FBI not rendering a decision on Plaintiffs' request for a fee waiver constituted a violation of FOIA. SUMF n.1. The FBI, however, subsequently "granted news media status" to Plaintiffs. SUMF ¶ 3 n.1.

70) that "[t]he only dispute that remains is whether the information withheld in file numbers 1166-LV-29911 and 137-NY-19967 contains segregable information that should be released." SUMF ¶ 4.

## LEGAL STANDARD

"[T]he vast majority of FOIA cases can be resolved on summary judgment." *Brayton v. Off. of U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011); *see also Media Rsch. Ctr. v. Dep't of Just.*, 818 F. Supp. 2d 131, 136 (D.D.C. 2011) ("FOIA cases typically and appropriately are decided on motions for summary judgment.") (quoting *Defs. of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009)). Summary judgment is appropriate when the pleadings and evidence "show[] that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

In the FOIA context, "[w]hile the Government is 'entitled to a presumption that [it] complied with the obligations to disclose reasonably segregable material,'. . . this presumption of compliance does not obviate its obligation to carry its evidentiary burden and fully explain its decisions on segregability." *Acosta v. FBI*, 946 F. Supp. 2d 53, 66 (D.D.C. 2013) (quoting Hodge v. FBI, 703 F.3d 575, 582 (D.C. Cir. 2013)) (other citation omitted). "A court may rely on government [declarations] that show with reasonable specificity why documents withheld . . . cannot be further segregated." *Juarez v. Dep't of Just.*, 518 F.3d 54, 61 (D.C. Cir. 2008). Such declarations, however, need not "provide so much detail that the exempt material would be effectively disclosed." *Dorsett v. Dep't of Treas.*, 307 F. Supp. 2d 28, 40 (D.D.C. 2004) (quoting *Johnson v. Exec. Off. of U.S. Att'ys*, 310 F.3d 771, 776 (D.C. Cir. 2002)); *see also Mead Data Cent. v. Dep't of Air Force*, 566 F.2d 242, 261 (D.C. Cir. 1977) ("[o]f course agencies should not be forced to provide such a detailed justification that would itself compromise the secret nature of

potentially exempt information"). Rather, it is sufficient for agencies "to provide the reasons behind their conclusions" and to "describe what proportion of the information in a document is non-exempt and how that material is dispersed throughout the document." *Id*. And "'[r]easonable specificity' can be established through a 'combination of the *Vaughn* index and [agency] affidavits'" or declarations. *Acosta*, 946 F. Supp. 2d at 66 (quoting *Johnson*, 310 F.3d at 776).

Generally, once the moving party has met its burden on summary judgment, the nonmoving party can overcome summary judgment by "set[ting] forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250. However, in the FOIA context, if a plaintiff does not provide evidence that an agency has acted in bad faith, "'a court may award summary judgment solely on the basis of information provided by the agency in declarations,' provided that the declarations are not 'conclusory, merely reciting statutory standards, or . . . too vague or sweeping.'" *Rojas-Vega v. Immigr. & Customs Enf't*, 302 F. Supp. 3d 300, 306 (D.D.C. 2018) (quoting *Moore v. Bush*, 601 F. Supp. 2d 6, 12 (D.D.C. 2009), and *King v. Dep't of Just.*, 830 F.2d 210, 219 (D.C. Cir. 1987)).

## ARGUMENT

Plaintiff does not dispute whether the FBI appropriately asserted exemptions to withhold information from file numbers 1166-LV-29911 and 137-NY-19967, but rather, challenges whether the FBI has satisfied its segregability obligations. *See* SUMF ¶ 4. Although it is true that even when FOIA exemptions apply, "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt[,]" *Sussman*

*v. U.S. Marshals Serv.*, 494 F.3d 1106, 1116 (D.C. Cir. 2007) (quoting 5 U.S.C. § 552(b)), the FBI here has satisfied its segregability obligations.

**I.    Segregation for Release is Not Required for Information Withheld in Full Under Exemption 7(D) That Was Provided by a Confidential Source.**

Michael G. Siedel—Section Chief of the FBI's Record/Information Dissemination Section of its Information Management Division—explains in his attached declaration that "the FBI conducted a document-by-document review of the records located in the two informant files (137-22152 and 137-NY-19967) at issue here," and "determined that there is no . . . non-exemption information that can be reasonably segregated and released without revealing exempt information." SUMF ¶¶ 5, 11. To be clear, the FBI grouped the withheld material into one or both of two functional categories: (1) evidentiary or investigative materials; (2) and administrative materials. SUMF ¶ 6. The first functional category "includes copies of records or evidence, analyses of evidence, and derivative communications discussing or incorporating evidence." SUMF ¶ 7. The second functional category includes "vital information associated with [an] investigation such as case captions, serial numbers, identities of FBI field offices, dates of investigations, [Confidential Human Source ('CHS')] identities (source symbol number/source file number/source code name), CHS expenses, CHS handling/suitability forms and documentation, information or detailed instructions designed to ensure that CHSs and/or investigative procedures are conducted within the appropriate FBI and Department of Justice guidelines." SUMF ¶ 8.

The records grouped under the first functional category are: (1) source interviews or handwritten interview notes; (2) envelopes regarding contact with a source and information provided by the source; (3) contents of envelops or source provided records; (4) source information shared with law enforcement; (5) memoranda regarding source contact and reporting; (6) letterhead memoranda regarding source contract or reporting; (7) teletype regarding source

handling, contact, or reporting; (8) electronic communications regarding source contact or reporting; (9) a cover sheet for source provided information; and (10) routing slips regarding handling of a source or information provided by a source. SUMF ¶ 9.

The records grouped under the second functional category are: (1) routing slips regarding handling of a source or information provided by a source; (2) source expenditures or reports; (3) source interview or handwritten interview notes; (4) envelopes regarding contact with sources and information provided; (5) contents of envelops or source provided records; (6) source information shared with law enforcement; (7) memoranda regarding source contact and reporting; (8) letterhead memoranda regarding source contact or reporting; (9) teletype regarding source handling, contact, or reporting; (10) electronic communications regarding source contact or reporting; (11) a cover sheet for source provided information; (12) source expenditures or reports; (13) source information shared with law enforcement; (14) source handling or suitability checks; (15) informant file charge outs (document removed or refiled); (16) field office notice regarding identity and information of source; and (17) miscellaneous administrative Confidential Human Source records and information. SUMF ¶ 10.

As can be seen from the descriptions above and the *Vaughn* index the FBI requested leave to submit for *ex parte*, *in camera* review, certain documents only contain information provided by a confidential source, which is protected by Exemption 7(D). *See Shem-Tov v. Dep't of Just.*, Civ. A. No. 17-2452, 2021 U.S. Dist. LEXIS 60928, at *9 (D.D.C. Mar. 30, 2021) (quoting *Cobar v. Dep't of Just.*, 81 F. Supp. 3d 64, 72 (D.D.C. 2015)) ("'Exemption 7(D) protects two distinct types of information: (1) information [that] could reasonably be expected to disclose the identity of a confidential source[;] [] and (2) information furnished by a confidential source' in the context of a criminal or national security investigation."). In the Exemption 7(D) context, the segregability

analysis for the information documented as furnished by a confidential source "is more straightforward than typical: the Exemption protects 'all information obtained from' such sources." *Id*. at *31. Thus, the FBI's withholding of information that originated with a confidential source requires no segregation.

## II. The Information Withheld from the Informant Files are Not Reasonably Segregable for Release.

Moreover, it has "long been the rule in this Circuit that non-exempt portions of a document must be disclosed *unless* they are inextricably intertwined with exempt portions." *Mead Data*, 566 F.2d at 260 (emphasis added). Mr. Seidel states that "after additional extensive review of the files at issue, the FBI determined that there is no further non-exempt information that can be reasonably segregated and released without revealing exempt information." SUMF ¶ 12.

The *Vaughn* index the FBI has requested leave to submit for *ex parte*, *in camera* review confirms Mr. Seidel's assessment. The descriptions on the *Vaughn* index demonstrate that the substantive information included in the withheld documents, pertain to the identity of third-party individuals, information reasonably likely to lead to the disclosure of the identity of a confidential source, or the FBI's handling of confidential sources, the FBI has withheld as exempt from disclosure under one or a combination of FOIA Exemptions 3, 6, 7(C), 7(D), or 7(E). SUMF ¶ 13. As Mr. Seidel has previously explained, disclosure of any of the information in the two withheld confidential informant files "would reveal the scope and extent of the FBI's use and strategies of [Confidential Human Sources] in FBI investigations, which would also interfere with ongoing operations." SUMF ¶ 14. For example, the release of the information "would reveal to criminals when and how the FBI will most likely utilize [Confidential Human Sources] in its operations," which "would alert criminals as to when they should most likely expect FBI [Confidential Human Sources] to be employed and allow them to judge when they should shore up any weaknesses in

their operations to prevent penetration by" those sources. SUMF ¶ 15. In other words, all the withheld information pertains to "the inner mechanisms, recruitment and maintenance of" the FBI's Confidential Human Source program, which is a law enforcement technique and procedure protected under Exemption 7(E). SUMF ¶ 16; *see also Elec. Frontier Found. v. Dep't of Just.*, 384 F. Supp. 3d 1, 14 (D.D.C. 2019) (finding "investigative techniques and procedures of [the FBI's] informant program" appropriately withheld under Exemption 7(E)).

Even if any information were subject to release, the information would provide minimal or no informational content. SUMF ¶ 17. "The FBI is not required 'to commit significant time and resources to the separation of disjointed words, phrases, or even sentences which taken separately or together have minimal or no information content.'" *Brunetti v. FBI*, 357 F. Supp. 2d 97, 111 n.11 (D.D.C. 2004) (quoting *Mead*, 566 F.2d 261, n.55). Simply put, the FBI's explanation for why the pages in the informant files have been withheld in their entirety is logical and is appropriately supported by one or multiple exemptions.

\*   \*   \*

## CONCLUSION

For the foregoing reasons, the Department respectfully requests that this Court grant it summary judgment.

Dated: December 1, 2021
      Washington, DC

Respectfully submitted,

MATTHEW M. GRAVES, D.C. Bar #481052
United States Attorney

BRIAN P. HUDAK
Acting Chief, Civil Division

By:     /s/ *Michael A. Tilghman II*
    MICHAEL A. TILGHMAN II
    D.C. Bar #988441
    Assistant United States Attorney
    555 Fourth Street, NW
    Washington, DC 20530
    (202) 252-7113
    Michael.Tilghman@usdoj.gov

*Attorneys for the United States of America*