**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **PROPERTY OF THE PEOPLE, INC.,** *et al.*, | |
| **Plaintiffs,** | |
| v. | **Civil Action No.  17-1193 (JEB)** |
| **DEPARTMENT OF JUSTICE,** | |
| **Defendant.** | |

## MEMORANDUM OPINION

The third time is not the charm for Plaintiffs in their efforts to obtain certain Federal Bureau of Investigation records.  Plaintiffs — Property of the People, a government-transparency organization; Jason Leopold, an investigative reporter; and Ryan Shapiro, one of the co-founders of Property of the People — have been on a multi-year quest to access FBI documents mentioning former President Donald Trump but predating his entrance into the campaign in 2015.  After two previous rounds of summary-judgment briefing, the issues in the case have narrowed considerably to just one question: does any segregable information remain in two specific FBI files?  Having completed its own *in camera* review of a selection of 50 representative documents from these two files, the Court finds that there is no meaningful information that could be segregated and released and so grants summary judgment for Defendant.

## I.      Background

Despite the parties' repeated appearances before this Court, this case's procedural history is relatively straightforward.  On March 16, 2017, Plaintiffs filed a FOIA request with the FBI

1

seeking "[a]ny and all records mentioning or referring to the living person Donald John Trump"
in a period between 1946 and 2015, "as well as records relating to several FBI case files" that
they believed "referr[ed] to Donald Trump by name."  ECF No. 1 (Compl.), ¶ 11.  The
Department of Justice acknowledged receipt of the request later that month, id., ¶ 12, and then
issued a Glomar response in which it refused to confirm or deny the existence of law-
enforcement records responsive to Plaintiffs' requests.  Prop. of the People v. Dep't of Just., 310
F. Supp. 3d 57, 62–63 (D.D.C. 2018).  After Plaintiffs then sued, this Court found in 2018 that
the Department had not adequately justified its Glomar response.  Id. at 73.

Justice then began the process of identifying responsive documents, some of which were
released and some of which were withheld in full or in part under a miscellany of FOIA
exemptions.  In April 2021, this Court addressed the applicability of those exemptions as to 116
pages in particular, finding some withholdings proper and some not.  Prop. of the People, Inc. v.
Dep't of Just., 539 F. Supp. 3d 16, 21 (D.D.C. 2021).  A dispute remained, however, as to
whether all of the material in two FBI confidential-informant files — 137-22152 and 137-NY-
19967 — could be withheld under Exemptions 7(D) and 7(E).  See ECF No. 66 (Joint Status
Report of May 20, 2021) at 2.  Those two exemptions cover "records or information compiled
for law enforcement purposes" that, respectively, "could reasonably be expected to disclose the
identity of a confidential source" or "would disclose techniques and procedures for law
enforcement investigations or prosecutions" or guidelines for such investigations and
prosecutions "if such disclosure could reasonably be expected to risk circumvention of the law."
5 U.S.C. § 552(b)(7)(D)–(E).  The Court denied summary judgment on the Government's effort
to "withhold all of the documents at the file level" for those two files and explained that "the
Government should revisit its decisions on segregability during its category review [of

documents in the files] and release any reasonably segregable portions."  Prop. of the People, Inc. v. Dep't of Just., No. 17-1193, 2021 WL 3052033 (D.D.C. July 20, 2021), at *2–3.  The FBI provided Plaintiffs a declaration on September 23, 2021, that addressed the withholdings in the two files, see ECF No. 72-1 (Def. MSJ) at 2, and by the next month the parties had agreed that the only remaining dispute was "whether the information withheld in [those files] contains segregable information that should be released."  ECF No. 70 (Joint Status Report of October 1, 2021) at 2.  To resolve this dispute, the parties again have cross-moved for summary judgment. See Def. MSJ; ECF No. 75 (Pls. Cross-MSJ).

## II.    Legal Standard

Summary judgment must be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986); Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006).  A fact is "material" if it can affect the substantive outcome of the litigation.  See Liberty Lobby, 477 U.S. at 248; Holcomb, 433 F.3d at 895.  A dispute is "genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Liberty Lobby, 477 U.S. at 248; see also Scott v. Harris, 550 U.S. 372, 380 (2007); Holcomb, 433 F.3d at 895.  "A party asserting that a fact cannot be or is genuinely disputed must support the assertion" by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).

FOIA cases typically and appropriately are decided on motions for summary judgment. See Brayton v. Off. of the U.S. Trade Representative, 641 F.3d 521, 527 (D.C. Cir. 2011).  In a

FOIA case, a court may grant summary judgment based solely on information provided in an agency's affidavits or declarations when they "describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith."  Larson v. Dep't of State, 565 F.3d 857, 862 (D.C. Cir. 2009) (citation omitted).  Such affidavits or declarations "are accorded a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'"  SafeCard Servs., Inc. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quoting Ground Saucer Watch, Inc. v. CIA, 692 F.2d 770, 771 (D.C. Cir. 1981)).  "FOIA expressly places the burden 'on the agency to sustain its action' and directs the district courts to 'determine the matter de novo.'"  Dep't of Justice v. Reporters Comm. for Freedom of Press, 489 U.S. 749, 755 (1989) (quoting 5 U.S.C. § 552(a)(4)(B)).

## III.   Analysis

The Court first sets out the general legal framework regarding segregability and then applies it to the documents at issue here.

### A.   Segregability Framework

Congress enacted FOIA "to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny."  Dep't of Air Force v. Rose, 425 U.S. 352, 361 (1976) (citation omitted).  The statute promotes these aims by providing that "each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules[,] . . . shall make the records promptly available to any person."  5 U.S.C. § 552(a)(3)(A).  The Government need not, however, turn over requested information that falls into one of nine statutorily created exemptions from FOIA's broad directive.  Id. § 552(b)(1)–(9).

This Court can compel the release of any records that do not satisfy the requirements of at least one exemption.  See Reporters Comm., 489 U.S. at 755.

Even when some information may be withheld under an exemption, FOIA also requires that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt."  5 U.S.C. § 552(b).  Thus "an agency cannot justify withholding an entire document simply by showing that it contains some exempt material."  Mead Data Cent., Inc. v. Dep't of Air Force, 566 F.2d 242, 260 (D.C. Cir. 1977).  This rule applies even when the relevant exemptions deal with sensitive law-enforcement information such as a confidential source or investigation techniques.  See, e.g., Stolt-Nielsen Transp. Grp. Ltd. v. United States, 534 F.3d 728, 731 (D.C. Cir. 2008) (finding that although Exemption 7(D) applied to parts of documents, "the government has not established that there are no reasonably segregable portions of the documents required to be released under FOIA").  Additionally, a court should not approve the withholding of certain information as non-segregable "because of the court's low estimate of the value to the requestor of the information withheld," but it may "decline to order an agency to commit significant time and resources to the separation of disjointed words, phrases, or even sentences which taken separately or together have minimal or no information content."  Mead Data, 566 F.2d at 261 n.55.

When a court reviews an agency's segregability determination, the agency is "entitled to a presumption that [it] complied with the obligation to disclose reasonably segregable material," Hodge v. FBI, 703 F.3d 575, 582 (D.C. Cir. 2013) (alteration in original) (citation omitted), but this presumption does not rid the Government of its obligation to fully explain its decisions on segregability.  Mead Data Cent., 566 F.2d at 261–62.  The Government must also "show with reasonable specificity why the documents cannot be further segregated," Armstrong v. Exec.

Office of the President, 97 F.3d 575, 578 (D.C. Cir. 1996) (internal quotation marks and citation omitted), and in so doing offer "a 'detailed justification' and not just 'conclusory statements' to demonstrate that all reasonably segregable information has been released."  Valfells v. CIA, 717 F. Supp. 2d 110, 120 (D.D.C. 2010) (quoting Mead Data, 566 F.2d at 261).  "[R]easonable specificity" can be established through a "combination of the Vaughn index and [agency] affidavits."  Johnson v. Exec. Off. for U.S. Att'ys, 310 F.3d 771, 776 (D.C. Cir. 2002) (internal quotation marks and citation omitted).  If a declaration fails to provide "sufficient detail concerning the non-exempt information to allow meaningful review concerning segregability," a court may require that documents be provided for in camera review.  Barnard v. Dep't of Homeland Sec., 531 F. Supp. 2d 131, 140–41 (D.D.C. 2008) (relying on in camera review after rejecting declaration that failed to describe proportion of non-exempt information).

> B.   Application to Documents in FBI Files

The parties agree that "the only issue before the Court is that of segregability."  Pls. Cross-MSJ at 6; Def. MSJ at 4 ("Plaintiff does not dispute whether the FBI appropriately asserted exemptions to withhold information . . . but rather[] challenges whether the FBI has satisfied its segregability obligations.").  In a Joint Status Report, in fact, they identified this as the sole remaining dispute, see Joint Status Report of October 1, 2021, at 2, and although a series of FOIA exemptions — namely, Exemptions 3, 6, 7(A), 7(C), 7(D), and 7(E) — has been invoked for documents in the two informant files, the Court will address only segregability given the parties' agreement.  See Def. MSJ at 1.  In other words, to the extent that arguments remain about the applicability of different exemptions, particularly Exemptions 7(D) and 7(E), see Pls. Cross-MSJ at 6–10, those arguments are waived.  Am. Ctr. for L. & Just. v. Dep't of Just., 325 F. Supp. 3d 162, 168 (D.D.C. 2018) (when "sophisticated parties to a FOIA case have agreed to

narrow the issues in a written status report, they generally may be held to their agreement under traditional waiver principles").

The FBI asserts that it cannot segregate any of the material in the hundreds of records contained within these two informant files. It has "conducted a document-by-document review of the records" and "determined that all information on these pages was either fully covered by one or more of the cited FOIA exemptions, or determined that non-exempt information on these pages was so intertwined with exempt material, that no information could be reasonably segregated for release." ECF No. 72-3 (Fourth Declaration of Michael G. Seidel), ¶¶ 3, 14. Plaintiffs protest that Defendant has failed to provide the explanation required in this Circuit as to why no information was reasonably segregable and has instead simply relied on the high level of secrecy associated with a confidential informant file to justify its determination. See Pls. Cross-MSJ at 3. In particular, they believe that Justice has not adequately identified what share of the material at issue is non-exempt and why those non-exempt portions cannot be segregated. See ECF No. 85 (Pls. Reply) at 1.

The Court looks first to the FBI's stated reasons for finding all the information contained in the two files non-segregable. Defendant produced a Vaughn Index accompanying its Reply in which it detailed the types of documents at issue and why harm would result from trying to segregate and release any information they contained. See ECF No. 82-1 (Fifth Declaration of Michael G. Seidel, Exhibit A). The Vaughn Index is the product of substantial work and is quite detailed inasmuch as it includes identifications of which exemptions apply down to the sub-category level in order to provide the exact reason for withholding — e.g., for Exemption 3 the sub-categories include the specific statute that applies to the information. Id. at ECF p. 13. For each document, the Index also includes an explanation of why the information is non-segregable

based on what the FBI frames as a "segregability-harm analysis."  Although the segregability-harm analysis for each document differs somewhat, writ large the justification is that disclosure of details contained in the documents "would harm the individual source by revealing source identity and activities."  E.g., id. at ECF p. 15.  The FBI's declarant, Michael Seidel, has also repeatedly explained the basis for the agency's segregability determination.  This boils down to the conclusion that "the FBI cannot segregate for release any of the information contained in the informant file that was provided by a confidential informant file or that would function to identify the confidential source," nor can "non-exempt information . . . be readily segregated from source-related documents such as those indexed into the source files at issue in this case."  Fifth Seidel Decl., ¶ 5; Fourth Seidel Decl., ¶ 14.

Although the FBI seems to acknowledge that the records do contain some non-exempt information, neither the Vaughn Index nor the various Seidel Declarations specify as required which parts of each document are exempt and which are not.  See Fourth Seidel Decl., ¶ 14; ECF No. 80 (Def. Reply) at 3; see also Ctr. for Pub. Integrity v. United States Dep't of Com., 401 F. Supp. 3d 108, 117 (D.D.C. 2019) ("[F]or each entry the defendant is required to specify in detail which portions of the document are disclosable and which are allegedly exempt."); see also Pls. Reply at 1–3.  In creating a Vaughn Index, an agency is expected to make such a distinction, Vaughn v. Rosen, 484 F.2d 820, 827 (D.C. Cir. 1973), and in explaining its choice as to segregability, it must "also describe what proportion of the information in a document is non-exempt and how that material is dispersed throughout the document."  Mead Data, 566 F.2d at 261.  The proportion of the information that is non-exempt in turn affects the extent of the agency's "explanatory burden" as to why the information is non-segregable.  Muttitt v. Dep't of State, 926 F. Supp. 2d 284, 310 (D.D.C. 2013).  Here, the Vaughn Index indicates which

exemptions apply to each document overall, but the declarations do not describe what proportion of information is not exempt, leaving the Court unable to determine how much non-exempt information the two files actually contain.  Instead, the Government simply claims that "the most the FBI could segregate from the records at issue would be headings of standard forms, which are not substantive and would not reveal anything of use to Plaintiff about the responsive records."  Fifth Seidel Decl., ¶ 6.  From this statement alone, the Government has not satisfied its obligation under Mead Data.

As a result, the Court determined that *in camera* review was appropriate.  "In making a determination as to segregability or any other question under FOIA, a district court judge 'may examine the contents of . . . agency records *in camera* . . . .'  This Circuit has interpreted this language to give district court judges broad discretion in determining whether *in camera* review is appropriate."  Armstrong, 97 F.3d at 577–78 (quoting 5 U.S.C. § 552(a)(4)(B)) (other internal citations omitted).  As there are hundreds of documents in the two files, the Court determined that a representative sampling would be the most efficient path forward.  At its request, therefore, the FBI produced "copies of 50 documents[,] which represent a range of different types of documents in the withheld files," to allow the Court to assess for itself whether any segregable information was intermixed with exempt information.  See ECF No. 83 (Notice of *In Camera* Submission) at 1; Minute Order of March 24, 2022.  It also later produced, at the Court's direction, a subset of 20 of those documents "marked with what information is exempt and what is non-exempt."  Minute Order of April 6, 2022; ECF No. 87 (Notice of *In Camera* Submission).

Having reviewed this representative sample of documents, the Court agrees with Defendant that any non-exempt information in the two files is either "inextricably intertwined with exempt portions" or would require a significant expenditure of resources for the release of

only words or phrases that provide little or no information.  Mead Data, 566 F.2d at 260, 261 n.

55; see also Ullah v. CIA, 435 F. Supp. 3d 177, 188 (D.D.C. 2020) (finding that "Court's own

line-by-line *in camera* review suffices to persuade it that the non-exempt portions of the withheld

and redacted documents" could not be further segregated).

Here, the records within the two files contain information obtained from and regarding

confidential sources such as source activities, interviews, and future plans.  Much of this

information is thus too intertwined with exempt information to allow separation.  As the

Government notes, moreover, many of the "substantive portions of the source records contain

details . . . that may seem relatively harmless at first blush but taken together would give

significant details about the extent of the information the source provided, the dates and extent of

source activity, and the geographic location about which the source reported."  Fifth Seidel

Decl., ¶ 6.  Having reviewed a sample of records, the Court agrees that most of the information

they contain cannot be disentangled from exempt information.

Plaintiffs correctly observe, however, that there is also some information that is non-

exempt and "make[s] sense standing alone" without threatening any exemptions.  Cable News

Network, Inc. v. FBI, 298 F. Supp. 3d 124, 130 (D.D.C. 2018).  Such material includes, for

example, indications of whether an FBI search involved an "exact spelling" of someone's name

or a checkbox stating how the document was transmitted.  See Pls. Reply at 5, 19.  In assessing

the segregability of such information, the Court understands that it does not decide whether

segregable, non-exempt information contained in a record is helpful to the requester or not.  See

Stolt-Nielsen Transp. Grp. Ltd., 534 F.3d at 734 ("FOIA does not require that information must

be helpful to the requestee [*sic*] before the government must disclose it.").  As a result, courts

have required the release of relatively brief excerpts of non-exempt information that would

"make sense standing alone."  Cable News Network, Inc., 298 F. Supp. 3d at 130 (finding several non-exempt sentences in email chain releasable).  Indeed, when relatively few documents are at issue, courts have ordered agencies to segregate out small information that on its face appears to have little value.  See, e.g., Ctr. for Pub. Integrity, 401 F. Supp. 3d at 120–21 ("[g]iven the narrow set of disputed documents in this case," non-exempt header information should be segregated despite argument that information would "result in fragments with no meaning").

Inherent in the test the D.C. Circuit laid out in Mead Data, however, is a balancing under which a court can "decline to order an agency to commit significant time and resources to the separation of disjointed words, phrases, or even sentences" with "minimal or no information content."  566 F.2d at 261 n.55.  Here, Plaintiffs acknowledge "that much of the non-exempt information in this case consists of checkboxes and fields which may contain one or a few words" that are non-substantive.  See Pls. Reply at 19.  The Court notes that it is difficult to see what meaningful information could be gleaned from, for instance, whether a form contains a checkbox stating, "To Be Returned" or "Receipt Given," although Plaintiffs may nonetheless still desire this information.  Cf. id. at 15.

It must be remembered, furthermore, that the segregability analysis here does not apply to a mere handful of documents.  Instead, because there are hundreds, it would require "significant time and resources" for the Government to sift through all in order to segregate non-exempt information.  Cf. id. at 19–20.  The Court finds that to release the non-exempt information that makes sense standing alone would result in negligible, if any, meaningful information going to Plaintiffs, yet it would require a considerable expenditure of government resources.  The balancing does not favor Plaintiffs.  The Court thus concurs with the FBI's conclusion that these

records cannot be further segregated and will not require the release of any additional

information.

**IV.      Conclusion**

      For these reasons, the Court will grant Defendant's Motion for Summary Judgment.  A

separate Order so stating will issue this day.

/s/ James E. Boasberg
JAMES E. BOASBERG
United States District Judge

Date:  April 19, 2022